UNITED STATES of America,
Plaintiff–Appellee,

v.

Lewis Theodore WACKER,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Leroy Allen COOLEY, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

John Lee WACKER, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Edith Faye WACKER, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Susan Mary BOYLE, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael L. LIPP, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Perl Glen VAN PELT, Defendant–
Appellant.

Nos. 93–3372, 93–3375, 93–3385, 94–3001,
94–3002, 94–3007 and 94–3024.

United States Court of Appeals,
Tenth Circuit.

Dec. 26, 1995.

As Modified on Denial of Rehearing
March 11, 1996.

Michael L. Lewis, Topeka, Kansas, for Defendant/Appellant Lewis Theodore Wacker.

James G. Chappas, Topeka, Kansas, for Defendant/Appellant Leroy Allen Cooley.

F.G. Manzanares, Topeka, Kansas, for Defendant/Appellant John Lee Wacker.

James P. Moran, Assistant Federal Public Defender, Denver, Colorado (Michael G. Katz, Federal Public Defender, Denver, Colorado, with him on the brief), for Defendant/Appellant Edith Faye Wacker.

Edward G. Collister, Jr. of Collister & Kampschroeder, Lawrence, Kansas, for Defendant/Appellant Susan Mary Boyle.

Susan M. Hunt, Kansas City, Missouri (John P. O'Connor, Kansas City, Missouri, with her on the brief), for Defendant/Appellant Michael L. Lipp.

Stephen W. Kessler, Topeka, Kansas, for Defendant/Appellant Perl Glen Van Pelt.

Gregory G. Hough, Assistant United States Attorney, Topeka, Kansas (Randall K. Rathbun, United States Attorney, with him on the brief), for Plaintiff/Appellee.

Before EBEL and HENRY, Circuit Judges, and COOK *, District Judge.

EBEL, Circuit Judge.

Appellants were charged in a fifteen-count superseding indictment with the commission of multiple drug trafficking and weapons offenses arising out of an extensive marijuana distribution conspiracy. Appellant Edith Wacker entered a guilty plea to two of those counts and was sentenced to a term of imprisonment. Edith Wacker now appeals her sentence, arguing that the district court miscalculated the drug quantity involved in her offense conduct, and improperly enhanced her sentence based on her role in the offense. The remaining defendants—Perl Van Pelt, Susan Boyle, John Wacker, Lewis Wacker, Leroy Cooley and Michael Lipp—pleaded not guilty to the charges and were subsequently convicted after a combined jury trial. These

---

* Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

defendants now challenge the sufficiency of the evidence for their convictions and appeal the district court's refusal to grant a mistrial based on improper juror communications. They also assert individually a number of additional trial errors. Finally, Lipp, Van Pelt and Cooley each appeal their sentences. We have jurisdiction under 28 U.S.C. § 1291.

### I.

On January 27, 1993, a grand jury returned a fifteen count superseding indictment against the defendants. Each defendant was charged with conspiracy to possess with intent to distribute approximately 2,000 pounds of marijuana, in violation of 21 U.S.C. § 846 (Count 1); four counts of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Counts 4, 5, 6, and 11);[1] and two counts of the use of a firearm in connection with a drug trafficking offense or conspiracy, in violation of 18 U.S.C. §§ 924(c)(1) and (2) (Counts 7 and 12). Each count was also charged on an aiding and abetting theory, pursuant to 18 U.S.C. § 2.

Lipp was also charged with one additional count of using a firearm in relation to a drug trafficking offense (Count 2) and three counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Counts 3, 10 and 15). Van Pelt was charged with two counts of possession of a firearm by a convicted felon (Counts 8 and 13), as was Cooley (Counts 9 and 14).

Prior to trial, Edith Wacker entered into a plea agreement with the United States Attorney. Pursuant to this agreement, Edith Wacker pleaded guilty to one count of conspiracy to possess with the intent to distribute approximately 2,000 pounds of marijuana in violation of 21 U.S.C. § 846 (Count 1), and one count of unlawful use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 7). The remaining charges against Edith Wacker were dropped pursuant to the agreement.

The other codefendants entered not guilty pleas.

At the trial of these six codefendants, persuasive evidence showed that the defendants operated a large marijuana harvesting and distribution operation on the farm of Theo and Esther Wacker (parents of defendants Edith, John and Lewis Wacker), located in Lincoln County, Kansas, and at the Van Pelt residence in Perry, Kansas. Police investigation began on July 20, 1990, when a confidential informant told Officer Larry Beagley of the Ellsworth Police Department that John, Lewis and Edith Wacker were harvesting marijuana on the Wackers' farm. Officer Beagley conducted surveillance of the Wacker farm on four separate occasions between August 29 and September 10, 1990. Each time, he observed marijuana plants growing on a separate parcel of property owned by Sidney Wacker, which property was known among the parties as "Down Yonder."[2] Beagley relayed this information to the Kansas Bureau of Investigation ("KBI").

On September 8, 1990, the KBI Crime Hot Line received a phone call from an anonymous woman who stated that a marijuana harvesting, drying and processing operation was being conducted at the Wacker farm. In response to Beagley's information, KBI Special Agent Rick Atteberry conducted aerial surveillance of the Wacker farm on September 10, 1990, and observed marijuana plants growing in a tree line adjacent to some outbuildings.

At approximately 12:18 a.m. on September 16, 1990, Trooper Mike Weigel of the Kansas Highway Patrol conducted a traffic stop of a pickup truck with a camper top driven by appellant Lipp. Lewis Wacker's wife, Carla Wacker, ("Carla") was a passenger in the truck, which was registered to Susan Boyle and Edith Wacker. Trooper Weigel issued Lipp a warning for a defective registration tag light, then asked to search the truck for guns or contraband. Lipp consented. Weigel searched the passenger compartment and discovered a set of brass knuckles, a large

---

1. Count 11 of the superseding indictment was dismissed without prejudice as to appellant Cooley on February 4, 1993.

2. Sidney Wacker is the brother of Lewis, John and Edith Wacker. He testified at trial that he owns the "Down Yonder" property.

box of trash bags, two corn knives, a roll of rope, and two rolls of duct tape. A search of the rear camper shell of the truck yielded a bag containing a 9 mm pistol; a pair of gloves smelling of fresh cut marijuana; a machete; and a white paper bag containing marijuana. Lipp and Carla were placed under arrest and taken into custody.[3]

Trooper Weigel then searched Carla's purse, finding a spoon with white residue and some white powder that was later found to be methamphetamine. In exchange for a grant of immunity, Carla agreed to serve as an informant for the KBI. Carla told government authorities that she, Lewis Wacker, Edith Wacker, Lipp, Van Pelt, Boyle and Cooley were involved in harvesting marijuana on the Wacker farm, and that at that time they were in the process of harvesting approximately 1,000 pounds.

Based on Carla's information that Van Pelt was going to be bringing marijuana into the Theo Wacker residence on the Wacker farm, Officer Beagley and KBI agents conducted further surveillance of the farm on September 16, 1990. At about 9:55 a.m., Beagley observed a Suburban belonging to Van Pelt and Boyle arrive at the farm and drive into a metal shed on the property. About thirty minutes later the Suburban left the shed and drove into the "Down Yonder" property where it disappeared into a tree-lined area for approximately fifteen minutes. KBI agents returned to the spot that evening and discovered six plastic trash bags containing processed marijuana. The Suburban returned to the shed on the Wacker farm at about 10:50 a.m., at which point Officer Beagley saw a fire burning and several people taking objects out of the shed and tossing them into the fire. He tentatively identified Lewis Wacker as one of the participants. John and Lewis Wacker later admitted that the conspirators were burning between 300 and 700 pounds of processed marijuana because they feared, correctly, that they were under police surveillance.

Around noon on the following day, September 17, KBI agents stopped the Suburban and found Boyle, Van Pelt and Cooley inside. The three were ordered out of the vehicle by the agents, who conducted pat down searches and discovered large amounts of cash in the possession of each suspect. The agents asked for and received permission to search the vehicle, and conducted a cursory search. The agents saw Boyle's open purse, in which a large wad of folded currency was visible, on the rear seat of the vehicle. The agents obtained a search warrant, and searched the contents of the purse and the trailer attached to the Suburban. The purse was found to contain, among other things, safe deposit box keys and several envelopes containing thousands of dollars in cash. A marijuana plant was found in the trailer. Van Pelt, Boyle and Cooley were placed under arrest. During routine interrogation, Van Pelt volunteered incriminating statements to police. He informed one agent that he had intended to harvest marijuana but had not yet done so, and if the agents had stopped him two days later they would have found marijuana. He told another police officer that marijuana could not have been found in the vehicle because he had "made damn sure there wasn't anything there."

KBI agents executed a search warrant for the Wacker farm on September 17, 1990. During the search, the agents seized numerous incriminating items, including: six trash bags of marijuana; 34 marijuana plants; a .22 caliber handgun; the "front sheets" used to track the money owed to each conspirator for his or her contributions to the harvesting operation; various marijuana processing materials with small amounts of marijuana residue; and drug paraphernalia.

It was reported in the presentence reports, and found by the district judge during sentencing to be accurate, that on September 19, 1990, Edith Wacker told KBI agents that she and her coconspirators had planned to harvest approximately 2,000 pounds of marijuana but had been stopped before reaching that goal. She informed the agents that she kept records of the operation (the "front sheets") to ensure that each of the participants would

---

**3.** After the car was impounded, agents found other incriminating items, including clothing with marijuana and marijuana residue, marijua-

na seeds and residue throughout the pickup, and a drying fan and camouflage netting.

be paid for their work and explained that the abbreviations on the front sheets were shorthand references to Lipp, Cooley, Boyle, Carla Wacker, Van Pelt, Lewis Wacker, and herself. Her statement implicated all codefendants in the case.

KBI agents obtained a warrant and conducted a search of Van Pelt's home on September 19, 1990. The search revealed a number of items associated with marijuana processing, including marijuana seeds, books on marijuana growing, and a number of scales. Agents also found drug paraphernalia, counter-surveillance equipment, and several firearms. Among them were a loaded 9 mm semiautomatic pistol with two clips, found in a file cabinet, and a .22 caliber pistol with one speed loader, found in a drawer in the kitchen. Agents also seized records of a 1990 trip to New York, a letter from Edith Wacker regarding marijuana trafficking, photographs detailing marijuana being grown, processed and baled, and a hand-drawn map detailing the path to the "Down Yonder" area of the Wacker farm.

At trial, Carla Wacker testified that she had become aware of the marijuana conspiracy in 1989. She described the processing operation in detail and testified that Lipp had told her that, after baling, Van Pelt would take the marijuana to New York for sale. She testified that she, Boyle, Lewis Wacker, Edith Wacker, Lipp and Cooley picked marijuana. Van Pelt determined how much each would be paid. Carla also testified that Edith Wacker usually wore her .22 caliber pistol while out in the field.

Further testimony was offered. Cody Wacker, John Wacker's son, testified that he had observed marijuana growing on the farm in the summer of 1990. Kevin Adams, an inmate with whom Van Pelt and Cooley were incarcerated, testified to incriminating statements made by both of those defendants. Gary Conn, Edith Wacker's ex-husband, testified that he had participated in a substantial marijuana harvesting and processing operation run by Van Pelt and Boyle in the 1970s, and that he recalled weapons being present throughout. He specifically recalled automatic weapons. Van Pelt's brother testified that Van Pelt had not had a visible source of income for at least ten years. The government also presented expert testimony as to the uses of firearms in drug trafficking operations such as the one at issue here.

■ All six defendants who stood trial ("trial defendants") were convicted by the jury of at least the conspiracy count, one or more counts of possession with intent to distribute marijuana, and one or more counts of use of a firearm in relation to a drug trafficking offense. All of the defendants timely raised these appeals.[4]

## II.

The trial defendants mount several attacks on their convictions, asserting insufficient evidence, errors in trial procedure, errors in the admission of evidence, and constitutional errors in the application to them of various statutes. We address each of these arguments in turn.

### A. Sufficiency of the Evidence

■ All six trial defendants argue that the evidence was insufficient to support their convictions on the conspiracy and substantive charges. "In reviewing the sufficiency of evidence to sustain a jury's guilty verdict, we examine the evidence in the light most favorable to the government in order to determine whether the evidence ... together with all reasonable inferences to be drawn therefrom, is substantial enough to establish guilt beyond a reasonable doubt." *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995) (internal quotation marks omitted). We reverse only if no rational trier of fact could have found the es-

---

4. Perl Van Pelt initially filed his notice of appeal beyond the allowable time period. However, his case was partially remanded to the district court, which made a finding of excusable neglect pursuant to Fed.R.App.P. 4(b) and extended the time period for filing a notice of appeal. Because we find no abuse of discretion in the district court's finding of excusable neglect, see City of Chanute v. Williams Nat. Gas Co., 31 F.3d 1041, 1045 (10th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995), we affirm the district court's grant of Van Pelt's motion for an extension of time and now have jurisdiction over his appeal.

sential elements of the crime beyond a reasonable doubt. *United States v. Grimes*, 967 F.2d 1468, 1472 (10th Cir.), *cert. denied sub nom. McGlynn v. United States*, 506 U.S. 927, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992). Upon reviewing the record, we find the evidence more than adequate to support the convictions, both as to the conspiracy count and the substantive counts.

▮ The trial defendants also assert that there was insufficient evidence to support their convictions of using a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (Counts 2, 7 and 12).[5] Count 2 referred to the 9 mm pistol found in Lipp's truck, Count 7 referred to Edith Wacker's .22 pistol, and Count 12 referred to the 9 mm pistol found in a file cabinet at the residence Boyle shared with Van Pelt. Appellants assert that the evidence does not support the inference that they "used" the firearms within the meaning of the statute.[6]

At the time of appellants' trial, the governing rule in this Circuit was that a conviction for "use" was supported if the government established: (1) the defendant had "ready access" to the firearm; and (2) the firearm was an "integral part" of the criminal undertaking and increased the likelihood that the undertaking would succeed. *United States v. McKinnell*, 888 F.2d 669, 675 (10th Cir.1989). To show that a firearm was readily accessible, we had held that the government needed to show only that "the firearm was available to the defendant in the vicinity where the drug trafficking offense took place." *United States v. Parrish*, 925 F.2d 1293, 1297 (10th Cir.1991).

Subsequent to briefing and oral argument on this appeal, however, the Supreme Court clarified what evidence is necessary to support a conviction for "use" under section 924(c). In *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Court held that "[t]o sustain a conviction under the "use" prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." *Id.* at ——, 116 S.Ct. at 509. By way of illustration, the Court provided examples of those activities that constitute "active employment" of a firearm, and those that do not. *See id.* at —— – ——, 116 S.Ct. at 508–09. We find the Court's holding and examples controlling of the case at hand.[7]

▮ First, the Court held that "[a] defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds.... If the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used.' " *Id.* Accordingly, the Court reversed the section 924(c) convictions of two defendants. As to one defendant, the Court found no evidence of "active employment" of a firearm when the firearm was found in a bag locked in the trunk of the car defendant was driving when arrested. *Id.* at ——, 116 S.Ct. at 509. We find no meaningful distinction between the facts of that case and those surrounding the firearm charged in Count 2, which was found in a bag in the rear camper shell of the truck Lipp was driving when he was stopped. We therefore reverse Lipp's conviction on this Count.

▮ Similarly, the Court in *Bailey* found no evidence of active employment of a fire-

5. That statute penalizes a defendant who "during and in relation to any ... drug trafficking crime ... uses or carries a firearm." These defendants were charged only with firearm "use" during a drug trafficking crime. They were not charged with "carrying" a firearm during such an offense. All six trial defendants were convicted of Count 7, although Lipp's conviction of Count 7 was set aside at his sentencing hearing. In addition, Lipp was convicted of Count 2, and Boyle, Van Pelt and Cooley were convicted of Count 12.

6. Because Lipp incorporates by reference the arguments of his codefendants pursuant to Fed.

R.App.P. 28(i), we read his brief as raising a sufficiency of the evidence argument as to Count 2. Although no other defendant was charged under Count 2 and thus no other defendant challenges this count specifically, we find that the arguments raised as to the other counts are sufficiently similar to bring the issue properly before us.

7. To the extent that any of our earlier Tenth Circuit authorities interpreting the word "use" in § 924(c) are inconsistent with the rule announced in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), *Bailey* will obviously control.

arm where an unloaded, holstered gun was found "locked in a footlocker in a bedroom closet" of the defendant's home. *Id.* at ——, 116 S.Ct. at 509. While the 9 mm pistol found at Van Pelt's home was loaded, and the parties dispute whether the file cabinet in which it was found was locked, we again find no meaningful distinction between the facts surrounding Count 12 and those found legally insufficient in *Bailey.* There is nothing in the record to suggest that Van Pelt's gun was mentioned, displayed, brandished or accessed in any way during the course of the drug offenses for which the trial defendants were convicted. We therefore reverse the convictions of Boyle, Van Pelt, and Cooley on Count 12.[8]

■ It is a closer question whether the government presented sufficient evidence regarding the firearm charged in Count 7, the .22 pistol belonging to Edith Wacker. It is apparent from the record that Edith carried the gun on her person while picking marijuana. The evidence is also sufficient to demonstrate that the pistol was carried in furtherance of the conspiracy, and that it was reasonably foreseeable to the other coconspirators that it would be so carried, thus rendering them also responsible for the gun. *See Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946); *United States v. Davis,* 1 F.3d 1014, 1017 (10th Cir.1993) (applying *Pinkerton* theory to 924(c) charge). Inexplicably, however, Count 7 does not charge appellants under section 924(c)'s "carry" prong; the indictment alleges only that appellants "used" the gun.

In *Bailey,* the Supreme Court explained that:

> Under the interpretation we enunciate today, a firearm can be used without being carried, e.g., when an offender has a gun on display during a transaction ...; and a firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing throughout a drug transaction.

—— U.S. at ——, 116 S.Ct. at 507. At appellants' trial, the most damaging testimony regarding Edith Wacker's firearm was the following, offered by Carla Wacker:

Q: Friday you identified a gun ... Do you recall that?

A: Yes, sir.

Q. At any time when you were picking, did you see the gun present?

A. Edith usually had her pistol.

Q. Okay. You identified that as Edith's pistol?

A. Yes, sir.

Q. Okay. Would she be wearing that while she was picking?

A. Yes, sir.

Q. During the time that you were picking the marijuana.... what type of clothing would people wear while they were in the fields picking? * * *

A. Jeans, long sleeves.

Q. Okay. And to your knowledge, why were the jeans and long sleeved shirts worn?

A. So that you didn't get weed burn and stuff like that.

(R.O.A. Vol. XXXVIII, at 995–96). In addition, the government presented testimony from Cody Wacker that Edith kept two handguns in her house.

■ This evidence, we believe, was sufficient to support a conviction for "use" of a firearm under our then-existing standard. *See Parrish,* 925 F.2d at 1297.[9] However,

---

8. The Supreme Court in *Bailey* remanded the cases of both defendants for consideration of whether they could nonetheless be liable for "carry[ing]" a firearm under section 924(c)(1). Because none of the appellants here were charged under the "carry" prong of that statute, we need not remand this issue to the district court.

9. On the issue of use of a firearm, the jury was instructed as follows:

> The term 'use' in this instruction means the defendant has ready access to or possesses the firearm, the firearm was an integral part of his criminal undertaking, and the availability of the firearm increased the likelihood that this criminal undertaking would succeed. A firearm may be an integral part of a criminal undertaking if it provides a means of protecting a drug operation and intimidating those encountered in the course of drug transactions.

we cannot say how a jury might decide this issue if properly instructed under the law as defined by *Bailey*. The question of whether Edith Wacker's gun was "used" under section 924(c) is best left to the determination of a properly instructed jury. *Cf. Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (court reviewing sufficiency of the evidence should impinge upon jury discretion only to the extent necessary to guarantee the fundamental protection of the law). Accordingly, we remand this issue to the district court for a new trial, at which time further evidence on the issue of "use" may be presented.

■ We note that our remand is not inconsistent with the Double Jeopardy Clause. While reversal of a conviction on the grounds of insufficient evidence precludes retrial of the defendant, *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), we do not find that rule applicable here. The reasoning in *Burks* was twofold. First, by reversing a conviction for insufficient evidence, the reviewing court is actually making a determination that the trial court erred in failing to direct a verdict of acquittal on the evidence; accordingly, the defendant should be treated as though he or she were acquitted. *Id.* at 10, 98 S.Ct. at 2146–47. Second, the prosecution may not, consistent with the Double Jeopardy Clause, be afforded a second opportunity to supply evidence which it "failed to muster in the first proceeding." *Id.* at 11, 98 S.Ct. at 2147. Neither of these concerns is present in this case. Under the "use" standard in place at the time, the evidence adduced at appellants' trial was sufficient to sustain the section 924(c) convictions. Thus, the district court did not err in refusing to grant a judgment of acquittal because of insufficient evidence on those counts. Moreover, the government here cannot be held responsible for "failing to muster" evidence sufficient to satisfy a standard which did not exist at the time of trial. *See United*

*States v. Weems*, 49 F.3d 528, 530–31 (9th Cir.1995) (retrial not barred by double jeopardy where prosecutor failed to prove element of crime that, at time of trial, did not need to be proved) (citing *Linam v. Griffin*, 685 F.2d 369, 373–74 (10th Cir.1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983)).

We find the present situation analogous to that in *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). There, the Supreme Court found retrial appropriate where a certain item of evidence was erroneously admitted at trial, and without which the prosecution's proof was insufficient to sustain the conviction. The Court reasoned that had the evidence been properly excluded at trial, the prosecution would have attempted to offer additional evidence to satisfy its burden. *Id.* at 42, 109 S.Ct. at 291–92. Thus, the reversal was one for "trial error" rather than for pure insufficiency of evidence, and retrial did not violate double jeopardy. *Id.* at 33, 109 S.Ct. at 286–87. Here, our reversal is analogous to one based on trial error: the legal standard under which the jury was instructed and under which the government presented its proof was incorrect. We conclude that "whenever a conviction is reversed solely for failure to produce evidence that was not theretofore generally understood to be essential to prove the crime, ... double jeopardy does not bar reprosecution." *Linam*, 685 F.2d at 379 (Anderson, Dist. J., concurring).

Accordingly, we remand appellants Van Pelt, Boyle, Cooley, John Wacker and Lewis Wacker to the district court for retrial on the limited issue presented in Count 7 of whether Edith Wacker's gun was "used" within the meaning of section 924(c). The jury should be instructed under the *Bailey* standard, and the government may present additional evidence, if available, relevant to the issue of whether this firearm was used within the meaning of the statute.[10]

A defendant may 'use' a firearm without owning, firing, brandishing, or displaying it.
 If you find that the presence of the firearm was accidental or coincidental, you must find the defendant not guilty.

**10.** Because we reverse outright appellants' convictions of the firearms offenses charged in

Counts 2 and 12 without remanding those counts for a new trial, we need not address appellants' related argument that they were improperly sentenced based upon a "second or subsequent conviction" under section 924(c)(1). Even if these appellants are reconvicted upon retrial of Count 7, none of the appellants will be subject to the

## B. Improper Juror Communications

All six trial defendants also argue that the district court erred in failing to grant a mistrial on the basis of improper communications between jurors during voir dire. A ruling on a motion for mistrial is within the sound discretion of the district court and will not be disturbed absent a clear abuse of that discretion. *United States v. Berryhill,* 880 F.2d 275, 278 (10th Cir.1989), *cert. denied,* 493 U.S. 1049, 110 S.Ct. 853, 107 L.Ed.2d 846 (1990).

Jury selection in the defendants' combined trial commenced on June 15, 1993. Over the course of the day, the district judge repeatedly admonished the venirepersons not to discuss the case with anyone. The next morning, prior to the resumption of voir dire, the court clerk was given the following note by a prospective juror:

> During the questioning of the Jury yesterday the defense attorneys made some remarks that seem to conflict with each other or at least don't make sense to me.
>
> They said that we were not to take into account how many witnesses were for or against, that numbers didn't matter. Then they said that we should give no special attention or extra consideration to a law enforcement officer's testimony, to treat it like all others. They then made a remark to the effect that when there was conflicting testimony that we should lean toward the defense. They also made a remark that we should not try to read body language to try to determine who is not telling the truth.
>
> My question is simply this, how are we supposed to come to a decision based on the testimony. The way they seem to present it the tie goes to the defense.
>
> /s/ Michael Milleson

After receiving Juror Milleson's note, the district judge held an in chambers conference during which all defense attorneys moved for a mistrial. Alternatively, defense counsel requested that the court examine Milleson to ascertain the nature of the discussions and the number of prospective jurors involved.

The court denied the mistrial but elected to examine Milleson *in camera.*

During this examination, the district judge learned that Milleson, confused by the questioning of one of the trial defendants' attorneys, had discussed certain trial-related matters with three other venirepersons. Specifically, Milleson and the other jurors had discussed the credibility of prospective witnesses (especially police officers) and the reservations they would have in reaching a verdict if the defense were only to put on a few witnesses. Upon learning the nature of the jurors' conversation, defense counsel renewed their motions for mistrial, and alternatively requested that the court examine each juror that participated in the conversations. The district court denied both requests. The court instead excused Juror Milleson for cause, and admonished the jury in a lengthy curative instruction.

Appellants rely on a number of cases concerning improper third party communications with jurors—specifically, *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); *United States v. Hornung,* 848 F.2d 1040 (10th Cir.1988), *cert. denied sub nom. Green v. United States,* 489 U.S. 1069, 109 S.Ct. 1349, 103 L.Ed.2d 817 (1989); and *United States v. Day,* 830 F.2d 1099 (10th Cir.1987). Appellants argue that these cases establish a rule of presumptive prejudice whenever a jury is exposed to external information in contravention of a district court's instruction. Appellants cite no authority extending this rule to *internal* juror communications, but argue that "it is obvious ... as a matter of logic" that it would be so applied. Brief of Appellant John Wacker at 32. Although we are uncertain that the presumption of prejudice called forth in *Remmer, Hornung* and *Day* would apply to communications *among* venirepersons, as opposed to communications from outside sources, we need not resolve that issue here because, in any event, we are persuaded that appellants were not prejudiced in this case.

In *Remmer,* the Supreme Court held that any private communication or contact

---

"second or subsequent" provision of section 924(c)(1).

with a juror about a matter pending before the jury is deemed presumptively prejudicial. *Remmer,* 347 U.S. at 229, 74 S.Ct. at 451. This presumption of prejudice, however, is not conclusive; the burden is upon the government to establish, after notice to and hearing of the defendant, that any juror contact was harmless to the defendant. *Hornung,* 848 F.2d at 1044–45 (citing *Remmer,* 347 U.S. at 229, 74 S.Ct. at 451). In the proceedings below, appellants' principal concern was that "[p]otential juror bias in favor of law enforcement officers" existed during their trial. *See* Brief of Appellant Cooley at 36. Accordingly, the question becomes whether the appellants suffered any prejudice at trial because of a perceived juror bias in favor of law enforcement.

The Supreme Court has held that the test of juror impartiality is whether "the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961). In situations such as the one before us, when the alleged improper remarks were made by one potential juror and heard by other potential jurors during the jury selection process, we believe this is the proper test for evaluating claims of prejudice. When juror impartiality is questioned, the trial court has wide discretion in evaluating the competency of a juror to sit, and its decision will not be interfered with except for a clear abuse of discretion. *Berryhill,* 880 F.2d at 279; *Hornung,* 848 F.2d at 1044. We conclude that the evidence in the record is sufficient to rebut any claim of prejudice or juror bias.

After receiving Juror Milleson's note, the trial judge examined Milleson *in camera* to determine the precise nature and the extent of the conversations. Appellants did not object to the *in camera* procedure, nor did they seek to ask additional questions of Milleson. In any event, the procedure followed by the trial judge was quite similar to that approved in *Day,* where the defendant's claim of prejudice resulting from an improper conversation with a seated juror was overcome when the trial judge conducted a brief hearing, elicited the content of the conversation, and made a self-determination that no bias existed. 830 F.2d at 1104. Here, after conducting the examination, the trial judge concluded that Milleson was not so much biased in his opinion as he was confused by defense counsel's remarks during voir dire questioning. Nevertheless, the court excused Milleson from the venire and issued a lengthy instruction to the remaining venirepersons—an instruction specifically directed at clarifying any confusion defense counsel's remarks may have caused. Significantly, appellants did not seek to remove any of the other jurors from the panel by way of peremptory challenge, even though one petit juror, Juror Freeman, was identified as having participated in the improper communications with Milleson.[11]

The district judge was of the opinion that by excusing Milleson and issuing the cautionary instruction, any possible prejudice against the defendant would be cured. We agree. The district judge is entitled to rely upon its self-evaluations of allegedly biased jurors in determining actual juror bias. *Day,* 830 F.2d at 1105 (citing *Smith v. Phillips,* 455 U.S. 209, 217 n. 7, 102 S.Ct. 940, 946 n. 7, 71 L.Ed.2d 78 (1982)). Moreover, "even if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and juries are presumed to follow their instructions." *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993) (internal quotation marks omitted). Because the district court is in the best position to judge the effect of improper statements on a jury and the sincerity of the jurors' pledge to abide by the

**11.** Appellants make much of the fact that Juror Freeman made it onto the jury panel in their case. However, because the appellants still had peremptory challenges remaining after voir dire, it seems they could have excused Juror Freeman from the panel if they truly believed him to be biased in favor of law enforcement. *Cf. Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988) ("So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."); *United States v. McIntyre,* 997 F.2d 687, 698 n. 7 (10th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994).

court's instructions, its assessment is entitled to great weight. *United States v. Gibbons,* 607 F.2d 1320, 1330–31 (10th Cir.1979); *United States v. Tegzes,* 715 F.2d 505, 508–09 (11th Cir.1983). Accordingly, we reject the trial defendants' argument that a mistrial should have been granted.

### C. Motions for Severance

Boyle, Lewis Wacker and John Wacker argue that the district court erred by failing to sever each of their trials from that of their codefendants. Each asserts that he or she is less culpable than the others and that the jury was unable to compartmentalize the evidence against each defendant.

■■■■ A district court's decision denying a motion to sever is reviewed for abuse of discretion. *United States v. Rogers,* 925 F.2d 1285, 1287 (10th Cir.), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2812, 115 L.Ed.2d 985 (1991). The defendant bears the "heavy burden of demonstrating prejudice to his case." *Id.* To meet this burden, defendant must demonstrate actual prejudice and not merely a negative spill-over effect from damaging evidence presented against codefendants. *United States v. Cardall,* 885 F.2d 656, 667–68 (10th Cir.1989). Nor is it sufficient to show that one defendant is less culpable than the remaining codefendants. *United States v. Youngpeter,* 986 F.2d 349, 353 (10th Cir. 1993). The appellants here allege no facts from which we could infer prejudice or an inability of the jury to compartmentalize the evidence against each codefendant. Indeed, the fact that John and Lewis Wacker were each acquitted of two of the charges against them suggests that the jury was able to compartmentalize the evidence against each defendant. Because prejudice is not shown by "a hypothesis of prejudice," *Youngpeter,* 986 F.2d at 353, we find no indication that the district court abused its discretion in denying the motions for severance.

### D. Evidentiary Issues

#### 1. Admission of Prior Bad Acts Evidence

Appellants Boyle and Van Pelt argue that the district court erred in allowing the gov-

ernment to admit evidence of their prior bad acts at trial. Boyle and Van Pelt both invoke Federal Rule of Evidence 404(b), which provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed.R.Evid. 404(b). Over appellants' objections, the district court allowed the testimony of Pam Stewart that she and Van Pelt picked marijuana in 1981; the testimony of Maurice Heberly that he purchased wild Kansas marijuana from Van Pelt back in 1982 and 1984; and the testimony of Gary Conn that Van Pelt and Boyle had been involved in marijuana processing in 1977 and 1980. The district court concluded that the evidence was properly admissible pursuant to Rule 404(b) for the purpose of showing intent, motive and plan in the crimes alleged in the indictment.

■■■■ The standard of review for a district court's admission of evidence pursuant to Fed.R.Evid. 404(b) is for abuse of discretion. *United States v. Grissom,* 44 F.3d 1507, 1513 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1720, 131 L.Ed.2d 579 (1995). It is presumed that a defendant is protected from undue prejudice if the following four requirements are met:

(1) the government offered the evidence for a proper purpose;

(2) the evidence was relevant;

(3) the trial court made a Fed.R.Evid. 403 determination that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and

(4) the district court submitted a limiting instruction.

*Id.; Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). Boyle and Van Pelt assert error only as to the first and third of these requirements—namely, that the prior bad acts evidence was admitted for an improper purpose and that it was unfairly prejudicial under Rule 403. We address these arguments in turn.

 First, we believe the district court admitted the challenged evidence for a proper purpose. At trial, Boyle and Van Pelt disavowed any criminal intent in connection with the drug conspiracy. They also disputed any ownership or control over the drugs or other contraband. The government thus sought to demonstrate appellants' intent and plan by showing their continued involvement since the late 1970s in a marijuana trafficking conspiracy operating out of Kansas. The testimony of Stewart, Heberly and Conn was admitted for this limited purpose, and the jury was instructed to consider it only in this manner. Our previous cases recognize the probative value of uncharged acts evidence to demonstrate a criminal defendant's intent and plan in the context of a conspiracy prosecution. *See United States v. Record*, 873 F.2d 1363, 1375 (10th Cir.1989) (collecting cases). We therefore agree with the district court that the evidence was properly admitted to show appellants' intent and plan.

Second, Boyle and Van Pelt argue that even if the evidence was admitted for a proper purpose under Rule 404(b), it nevertheless failed to satisfy the balancing test of Rule 403.[12] *See United States v. Cuch*, 842 F.2d 1173, 1176 (10th Cir.1988) (even if prior bad acts evidence satisfies Rule 404(b), trial court must still balance probative value and prejudicial effect under Rule 403). Specifically, appellants argue that because the incidents to which Stewart, Heberly and Conn testified were unduly remote in time to the crimes charged, the probative worth of the evidence was substantially outweighed by the danger of unfair prejudice.

 The admission of evidence under Rule 403 is reviewed only for an abuse of discretion. *United States v. Rackstraw*, 7 F.3d 1476, 1482 (10th Cir.1993). In considering the prejudicial effect of prior bad acts that are temporally remote, we have eschewed any " 'absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case.' " *Cuch*, 842 F.2d at 1178 (quoting *United States v. Franklin*, 704 F.2d 1183, 1189 (10th Cir.), *cert. denied*, 464 U.S. 845, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983)). Applying this standard, we conclude that the proffered evidence is probative of a material issue and not unduly prejudicial. Although the bad acts testified to at trial occurred well before the offenses charged in the indictment, the prosecution used this testimony to show a long-standing pattern of drug activity from the late 1970s up until the time of appellants' arrest in 1990. Viewed in this light, the evidence is not unrelated and remote, but is integrally related to the criminal activity charged in the indictment. *See United States v. Record*, 873 F.2d 1363, 1372 n. 5 (10th Cir.1989) (uncharged prior acts that are "inextricably intertwined" with the charged crime are admissible); *United States v. Misle Bus & Equip. Co.*, 967 F.2d 1227, 1234–35 (8th Cir.1992) (admission of historical evidence concerning conspiracy did not violate Rule 403 even though it predated the limitations period and was remote in time). Accordingly, we reject appellants' claim that the district court abused its discretion in admitting the evidence.

**2. Motions to Suppress Evidence Seized During Vehicle Searches**

 Appellants Lipp and Boyle each allege violations of the Fourth Amendment in the admission of certain items of evidence at trial. Lipp argues that the district court should have granted his motion to suppress evidence found during a September 16, 1990 search of his truck. Similarly, Boyle argues that the district court erroneously denied her

---

**12.** "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R.Evid. 403.

pretrial motion to suppress all evidence seized after the police stopped and searched her Suburban on September 17, 1990. We review the factual findings underlying the district court's denial of a motion to suppress evidence for clear error. *United States v. Flores,* 48 F.3d 467, 468 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 122, 133 L.Ed.2d 72 (1995). However, the ultimate determination of reasonableness under the Fourth Amendment is a legal question which we review *de novo. Id.*

**(a) Denial of Lipp's motion to suppress**

Lipp challenges the district court's ruling that the evidentiary items seized from his truck were admissible as fruits of a consensual search. Lipp contends that although he consented to a search of the passenger cab of his truck, his consent did not extend to the rear camper shell area. Thus, Lipp argues, the evidence seized from the rear of the truck—marijuana seeds, residue, processed marijuana, camouflage netting, a 9 mm handgun, and a machete—should have been excluded at trial.

■■■ The scope of a consent search is limited by the breadth of the consent given. *United States v. Pena,* 920 F.2d 1509, 1514 (10th Cir.1990), *cert. denied,* 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). In the instant case, Lipp was pulled over for a defective license plate light. Trooper Weigel issued Lipp a warning and then asked Lipp for permission to search the car for guns or contraband. Lipp replied, "Yeah, go ahead and look if you want." After searching the passenger cab and finding some knives, trash bags and a set of brass knuckles, Trooper Weigel opened up the camper shell and conducted a search of the truck's bed. At no time during this search did Lipp object or attempt to confine the scope of the search. In denying Lipp's suppression motion, the trial judge found that Lipp consented to the search, that Lipp's consent was specific and voluntarily given, and that the search of the rear camper area did not exceed the scope of the search. We agree.

■■■ The standard for measuring the scope of a suspect's consent is that of " 'objective' reasonableness—what would the typi-

cal reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991). In *Jimeno,* the Court held that a suspect's consent to search his car for drugs included consent to search a container in the car that might reasonably hold drugs. *Id.* at 249, 111 S.Ct. at 1802–03. In so holding, the Court noted that the suspect had given the police officer a general consent to search the car, and had placed no explicit limitation on the scope of the search. *Id.* at 251, 111 S.Ct. at 1803–04. We too have held that where a suspect does not limit the scope of a search, and does not object when the search exceeds what he later claims was a more limited consent, an officer is justified in searching the entire vehicle. *See, e.g., Pena,* 920 F.2d at 1515 ("[F]ailure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent."); *United States v. Deases,* 918 F.2d 118, 122 (10th Cir.1990) ("Consent to search a car means to search the entire car and whatever is in it, unless such consent is otherwise restricted."), *cert. denied,* 501 U.S. 1233, 111 S.Ct. 2859, 115 L.Ed.2d 1026 (1991). Lipp's argument may be disposed of in a similar fashion. Trooper Weigel asked Lipp generally if he could search the car for drugs or contraband. Lipp consented, but placed no limits on the search. Neither did he later object when the search extended to the bed of the truck. Under these circumstances, we conclude that the search of Lipp's truck was valid.

**(b) Denial of Boyle's suppression motion**

The district court ruled that the items seized during the search of Boyle's Suburban were admissible because, *inter alia,* the police had probable cause to believe that the vehicle contained contraband. *See United States v. Crabb,* 952 F.2d 1245, 1246 (10th Cir.1991) (given probable cause to believe that the vehicle contains contraband, the Constitution does not require law enforcement agents to obtain a warrant before searching the vehicle), *cert. denied,* 504 U.S. 925, 112 S.Ct. 1981, 118 L.Ed.2d 579 (1992).

After reviewing the record and the district court's findings, we agree.[13]

Prior to stopping the Suburban, the police obtained information from Carla Wacker, the government's confidential informant, indicating that the vehicle was being used to transport processed marijuana from the drug operation for distribution in New York, and that the occupants (identified as Van Pelt, Boyle and Cooley) were each carrying large amounts of cash from drug transactions. Carla Wacker also informed police that the vehicle was parked at a campsite in the area, and that Van Pelt, Boyle and Cooley were camping in the area temporarily while harvesting marijuana on the Wacker farm. Based on this information, the police conducted aerial surveillance of the Wacker farm. On September 16, 1990, surveillance agents observed the Suburban going into the "Down Yonder" area of the farm. The agents subsequently searched the area where the vehicle had been and found six plastic trash bags containing processed marijuana. Because the police surveillance largely corroborated the information provided by Carla Wacker, we agree that the agents had probable cause to believe the vehicle was being used to transport marijuana and that the vehicle likely contained drugs, weapons, or other instrumentalities of crime. *See Illinois v. Gates,* 462 U.S. 213, 237–38, 103 S.Ct. 2317, 2331–32, 76 L.Ed.2d 527 (1983) (information provided by police informant may provide probable cause to search, "particularly when supplemented by independent police investigation"). Because they possessed probable cause, the police were not required to obtain a warrant before searching the vehicle. *United States v. Arzaga,* 9 F.3d 91, 94 (10th Cir.1993).

## 3. Admission of Lipp's Prior Convictions

Appellant Lipp contests the admission at trial of journal entries detailing his prior felony convictions.[14] We review the district court's decision whether to admit evidence of a defendant's prior crimes for abuse of discretion. *United States v. Brinklow,* 560 F.2d 1003, 1006 (10th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978).

Lipp was charged in Counts 3, 10 and 15 of the indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). This statute makes it "unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition." *Id.* At trial, the government offered the journal entries to prove an essential element of the crime under section 922(g)(1)—*i.e.,* that Lipp was a convicted felon. Lipp objected to the admission of the journal entries and offered to stipulate to the fact of his prior convictions. When the government refused to accept the stipulation, the district court overruled Lipp's objection and allowed the government to introduce the evidence. Lipp contends this was an abuse of discretion.

The government argues that this issue is controlled by our prior decision in *Brinklow.* In *Brinklow,* we held that the trial court did not abuse its discretion by refusing a defen-

---

**13.** The district court also articulated several alternative legal justifications for the vehicle search, including: (1) a search incident to a lawful arrest, *see United States v. Franco,* 981 F.2d 470, 473 (10th Cir.1992); (2) a protective search of the passenger compartment during a valid *Terry* stop, *see Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983); and (3) a search authorized by consent, *see Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973). (Because we conclude the police had probable cause to search the Suburban for contraband under the vehicle exception, *see Crabb,* 952 F.2d at 1246, we do not address these alternative arguments).

**14.** On May 9, 1972, in the United States District Court for the Southern District of New York, Lipp was convicted of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). He was sentenced to two years probation under the Federal Youth Corrections Act. On December 30, 1976, in Tarrant County, Texas, Lipp was convicted of two counts of murder, and one count of aggravated assault with a deadly weapon. Lipp received a sentence of 35 years incarceration for each murder conviction, and ten years for the aggravated assault conviction, all to run concurrently. Lipp was paroled on March 28, 1984.

dant's request to strike from the indictment and keep from the jury all references to his previous felony convictions. 560 F.2d at 1006. Recognizing that a prior felony conviction is an essential element of the offense, we held that "the government is not required to accept such [a stipulation] and may insist upon proving all essential elements of its case." *Id.* Although we remain faithful to our opinion in *Brinklow,* we do not believe that it is determinative of the case before us.

Lipp's request differs from the situation in *Brinklow.* In *Brinklow,* the defendant "proposed that [the] jury instructions specify only those essential elements of the crime other than that of a previous felony conviction and that the jury be instructed that there were additional necessary elements with which they did not need to be concerned." 560 F.2d at 1006. By contrast, Lipp's stipulation did not seek to keep from the jury the *fact* of his felony status, but only the nature and underlying circumstances of his prior crimes. We believe this distinction to be significant.

 Whereas the fact of a defendant's prior felony conviction is material to a felon in possession charge, the nature and underlying circumstances of a defendant's conviction are not. *See United States v. Barker,* 1 F.3d 957, 959 n. 3 (9th Cir.1993) ("The underlying facts of the prior conviction are completely irrelevant under § 922(g)(1) ..."), *amended on denial of reh'g,* 20 F.3d 365 (9th Cir.1994). The details of the defendant's prior crime do not make it "more probable or less probable" that the defendant is a convicted felon. *See* Fed.R.Evid. 401. Rather, this information tends only to color the jury's perception of the defendant's character, thereby causing unnecessary prejudice to the defendant. *See* Fed.R.Evid. 403 (evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice). At the same time, excluding only the nature and circumstances of a defendant's prior felony conviction does not prevent the jury from being "apprised of the offense charged and

all of its attendant elements, [including the element of a prior felony conviction]," *Brinklow,* 560 F.2d at 1006, nor does it impinge on the government's right to prove all essential elements of its case. *See United States v. Tavares,* 21 F.3d 1, 3 (1st Cir.1994) (*en banc*) ("A decision to honor a stipulation concerning the predicate crime in a felon-in-possession case in no way trenches upon the right of the prosecution to make a full presentation of the crime currently charged.").

 The majority of the circuits that have addressed this issue agree with the foregoing analysis and hold that evidence concerning the nature of the predicate crime in a felon in possession case is irrelevant and prejudicial. Such evidence should therefore be excluded if possible by use of a redacted record, stipulation, affidavit, or other similar technique whereby the jury is informed only of the *fact* of a prior felony conviction, but not of the *nature* or *substance* of the conviction. *See United States v. Jones,* 67 F.3d 320, 324–25 (D.C.Cir.1995); *United States v. Palmer,* 37 F.3d 1080, 1084 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1804, 131 L.Ed.2d 730 (1995); *United States v. Rhodes,* 32 F.3d 867, 870–71 (4th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1130, 130 L.Ed.2d 1092 (1995); *United States v. Tavares,* 21 F.3d 1, 3 (1st Cir.1994) (*en banc*); *United States v. Barker,* 1 F.3d 957, 959 n. 3 (9th Cir.1993), *amended on denial of reh'g,* 20 F.3d 365 (9th Cir.1994); *United States v. Gilliam,* 994 F.2d 97, 103 (2d Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993). *See also United States v. Dockery,* 955 F.2d 50 (D.C.Cir.1992) (ordering severance of felon-in-possession charge where government refused to enter into a stipulation that advises the jury merely of the fact of the former conviction).[15] Today we hold that where a defendant offers to stipulate as to the existence of a prior felony conviction, the trial judge should permit that stipulation to go to the jury as proof of the status element of section 922(g)(1), or

---

**15.** *But see United States v. Jacobs,* 44 F.3d 1219, 1224 (3d Cir.) (noting in dicta that the government is not required to accept defendant's offer to stipulate to fact of prior felony conviction), *cert. denied,* — U.S. —, 115 S.Ct. 1835, 131 L.Ed.2d 754 (1995); *United States v. Breitkreutz,*

8 F.3d 688, 691 n. 4 (9th Cir.1993) (even in the face of defendant's stipulation, prosecution may choose to prove up the underlying felony conviction by introducing evidence of that conviction); *United States v. Blackburn,* 592 F.2d 300, 301 (6th Cir.1979) (same).

provide an alternate procedure whereby the jury is advised of the fact of the former felony, but not its nature or substance. *See Tavares,* 21 F.3d at 4 (citing other non-prejudicial alternatives). Correspondingly, in those situations where the defendant is willing to concede the existence of the prior felony conviction, the trial judge should ordinarily preclude the government from introducing any evidence as to the nature or substance of the conviction, as the probative value of this additional information generally will be overshadowed by its prejudicial effect under Federal Rule of Evidence 403.

■ Applying these principles to the present case, we conclude that the district court abused its discretion when, in spite of Lipp's offer to stipulate to the fact of his prior convictions, it admitted the journal entries into evidence. Lipp's proposed stipulation did not attempt to keep from the jury the fact that he was a convicted felon, nor did it seek to preclude the jury from deciding the prior conviction element of the crime. Rather, the stipulation sought only to limit the prejudice that would result from the jury being informed that Lipp had been convicted of murder and possession with intent to distribute marijuana. The government offered Lipp's prior convictions for the sole purpose of proving the status element of section 922(g)(1), and because the proffered stipulation would have satisfied this element, the additional prejudicial information regarding the nature of Lipp's prior crimes should have been excluded under Rule 403.

We emphasize that our holding is driven primarily by the unique nature of section 922(g), and our analysis is therefore limited to this type of case. The D.C. Circuit has expressed concern that in "cases growing out of narcotics trafficking, the Government is free to charge an ex-felon firearms count together with other counts, thereby permitting the jury to hear otherwise inadmissible evidence regarding a defendant's prior conviction." *United States v. Dockery,* 955 F.2d 50, 50 (D.C.Cir.1992). We too recognize that

section 922(g) represents a significant departure from the traditional rules of fairness concerning the admission of prior crimes evidence. However, nothing in today's opinion should be read as limiting the prosecutor's ability to present a full picture of a prior crime when it has relevance independent of simply proving prior-felony status for section 922(g)(1).[16] As the First Circuit has stated:

> We fully concede the government's right to present to the jury a picture of the events relied upon, including proof of all elements of the crime for which the defendant has been brought to trial. The prosecution ordinarily may not be forced to eliminate gruesome details of a killing, the quantity of drugs, or the degree of malevolence exhibited by the defendant through a defense-proffered stipulation.

*Tavares,* 21 F.3d at 3 (citations and internal quotation marks omitted). Thus, the prosecution retains broad discretion to introduce the underlying circumstances of a crime when those circumstances are truly relevant to the presentation of the case.

■ Although we conclude that the admission of the journal entries in this case was erroneous, this does not end our inquiry, as we must now determine whether this error was harmless. Fed.R.Crim.P. 52(a). In conducting a harmless error analysis, this Court reviews the record *de novo. United States v. Perdue,* 8 F.3d 1455, 1469 (10th Cir.1992). Because Lipp did not assert a constitutional violation at trial, the error is deemed harmless "unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Flanagan,* 34 F.3d 949, 955 (10th Cir.1994) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)).

■ After reviewing the record, we believe the prejudice to Lipp in admitting the journal entries was slight in comparison to the overwhelming evidence of guilt. The

---

**16.** For example, a prior conviction or the conduct underlying the prior conviction may be relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). It

may also be admissible for impeachment purposes under Fed.R.Evid. 609(a). *See United States v. Powell,* 50 F.3d 94, 101–02 (1st Cir. 1995); *Jacobs,* 44 F.3d at 1224 n. 6.

government here properly curtailed its use of the prior crimes evidence; it did not parade Lipp's convictions before the jury or exploit them in any prejudicial fashion. *Compare Dockery*, 955 F.2d at 51 (government presented evidence of defendant's prior conviction on five separate occasions). On the other hand, the government presented abundant evidence at trial of Lipp's guilt on the conspiracy, distribution and firearms counts. Lipp was arrested after a search of his truck yielded a loaded 9 mm handgun, processed marijuana, and various items associated with marijuana harvesting. In addition, government witnesses at trial fully implicated Lipp as a participant in the harvesting operation and an important member of the conspiracy.[17] In light of this evidence, we cannot say that the erroneous admission of the specific nature of Lipp's prior convictions had a "substantial influence" on the outcome of this case, or that we are in "grave doubt" about such an effect. *Flanagan*, 34 F.3d at 955. Thus, we conclude that any error in admitting the journal entries was harmless. *See United States v. Sloan*, 65 F.3d 861, 865 (10th Cir.1995) ("Where the evidence against a defendant is overwhelming, any error in mentioning a defendant's criminal record is harmless."); *United States v. Laymon*, 621 F.2d 1051, 1053 (10th Cir.1980) (in a prosecution under the predecessor statute to 18 U.S.C. § 922(g), finding harmless error "in view of the ample evidence of [defendant's] guilt" where the jury was informed that the defendant's prior conviction was for shooting a town marshal).

### E. Improper Amendment of the Indictment

Appellant Cooley argues that his conviction on Count 7 of the superseding indictment for using a firearm in relation to a drug trafficking crime must be reversed on the ground that the district court improperly amended the indictment by submitting a nonconforming verdict form to the jury. Although we reverse and remand the trial defendants' conviction on Count 7 in light of *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), *see supra*

Part II.A., we address the improper amendment issue insofar as it may be relevant on retrial.

Count 7 of the indictment charged that Cooley and his coconspirators used Edith Wacker's .22 caliber pistol during and in relation to either the conspiracy charged in Count 1 of the indictment *or* the possession charge as charged in Count 4. The verdict form returned by the jury on Count 7 read as follows:

5. We, the jury, impaneled and sworn, hereby answer the following question propounded by the Court:

Do you find the defendant, Leroy Allen Cooley, not guilty or guilty as to count seven of the superseding indictment?

(check one) Not Guilty _____

 Guilty X

If your answer to question five is "guilty," indicate which crime or crimes you find that the defendant used the firearm during and in relation to:

(check one) Count 1 _____

 Count 4 _____

 Count 1 and Count 4 X

(R.O.A. Vol. IV, Doc. 352). Cooley contends that the district court's use of this verdict form constructively amended the indictment by giving the jury an additional choice—that is, it permitted the jury to find that Cooley used the gun in connection with Count 1 *and* Count 4, whereas the indictment alleged only that he used the gun in connection with Count 1 *or* Count 4.

Cooley is correct that the Fifth Amendment forbids amendment of an indictment by the court, whether actual or constructive. *United States v. Mosley*, 965 F.2d 906, 915 (10th Cir.1992). However, the Constitution does not forbid all amendments of an indictment, but only those that "effectively subject a defendant to the risk of conviction for an offense that was not originally charged in the indictment." *Id.* We do not believe that the verdict form's slight devia-

---

17. As a member of the conspiracy, Lipp is also criminally liable for the acts of his coconspira-

tors taken in furtherance of the conspiracy, of which there is also ample evidence in the record.

tion from the language of the indictment violated Cooley's rights under the Fifth Amendment. Because the jury concluded that Cooley used the firearm in connection with both Counts 1 and 4, the jury clearly found Cooley guilty as charged in Count. 7. The verdict form used by the trial court did not expand the scope of the indictment or expose Cooley to additional charges. Accordingly, we reject Cooley's argument that the verdict form improperly amended the indictment.

### F. Constitutional Challenges

■ Appellant John Wacker argues that the section of the Comprehensive Drug Abuse Prevention and Control Act of 1970 under which he was convicted, 21 U.S.C. § 841(a)(1) (the "Drug Act"), impermissibly regulates intrastate activities which do not substantially affect interstate commerce, in violation of the Tenth Amendment. Although he does not cite *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), we assume that he asks us, in light of that recent decision, to reconsider our holding in *United States v. King*, 485 F.2d 353, 356 (10th Cir.1973), that 21 U.S.C. § 841(a)(1) is constitutional.

This argument was recently rejected by the Fourth Circuit, *see United States v. Leshuk*, 65 F.3d 1105, 1111–12 (4th Cir.1995), and we agree that it is without merit. In *Lopez*, the Supreme Court struck down the Gun–Free School Zones Act of 1990, a congressional act making it a crime knowingly to possess a gun in a school zone. The Court noted that the Act "by its terms had nothing to do with 'commerce' or any sort of economic enterprise," and that Congress had made no express findings regarding the effect on interstate commerce of possessing a gun in a school zone. *Lopez*, —— U.S. at ———–—, 115 S.Ct. at 1630–32. In contrast, the conduct regulated by the Drug Act clearly implicates interstate commerce, and Congress made explicit findings explaining the conduct's "substantial and direct effect upon interstate commerce." 21 U.S.C. § 801(3)–(6).

The case at bar is, in fact, an example of the interstate impact of conduct regulated by the Drug Act: the evidence indicates that the drugs produced in Kansas were to have been sold in New York. We therefore hold that *Lopez* does not alter our previous conclusion that 21 U.S.C. § 841(a)(1) is constitutional.[18]

■ John Wacker further argues that the. Act cannot constitutionally be applied to him because the sections under which he was convicted apply exclusively to manufacturers, dispensers, distributors, and others who are required to be licenced or registered. This argument is also without merit. The statute on its face applies broadly to "any person" and the case law has universally interpreted it as so applying. *See, e.g., United States v. Fellman*, 549 F.2d 181, 182 (10th Cir.1977) (Congress intended the statute to reach "any person who deals in controlled substances without authorization").

### III.

Appellants Van Pelt, Lipp, Cooley and Edith Wacker also raise several challenges to their sentences. First, Van Pelt and Edith Wacker both contend that the district court improperly enhanced their sentences under U.S.S.G. § 3B1.1 for their aggravating roles in the criminal activity. Second, Cooley and Edith Wacker both argue that the district court erred in calculating the drug quantity attributable to them under the Sentencing Guidelines. Third, Lipp argues that his sentence was improperly enhanced based on a prior juvenile conviction that had previously been set aside.

### A. Role in Offense

Van Pelt and Edith Wacker both argue that the district court erred in enhancing their offense levels based upon their aggravating roles in the criminal activity. The district court enhanced Van Pelt's offense level by four points on the ground that he was "an organizer or leader of a criminal activity that involved five or more partici-

---

**18.** John Wacker was also convicted of violating 21 U.S.C. § 846, which addresses conspiracy or attempt to commit an offense defined in the Drug Act. Because we find the underlying substantive provision constitutional, we also find the conspiracy provision constitutional as applied to John Wacker.

**1476**

pants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The district court additionally found that Edith Wacker "was a manager or supervisor (but not an organizer or leader)" and imposed a three-level enhancement under U.S.S.G. § 3B1.1(b).

▮▮▮▮ Before imposing an enhancement based on a defendant's role in the offense, the sentencing court must make specific factual findings as to that role. *United States v. Roberts,* 14 F.3d 502, 522 (10th Cir.1993). Appellate review of these factual findings is for clear error, giving deference to the district court's application of the Sentencing Guidelines to the facts. *United States v. Torres,* 53 F.3d 1129, 1142 (10th Cir.), *cert. denied sub nom. Aflleje–Torres v. United States,* —— U.S. ——, 115 S.Ct. 2599, 132 L.Ed.2d 845 (1995) *and Aflleje v. United States,* —— U.S. ——, 116 S.Ct. 220, 133 L.Ed.2d 150 (1995). However, questions of law regarding the application of the Guidelines are reviewed *de novo. Roberts,* 14 F.3d at 523. The four-level enhancement prescribed by section 3B1.1(a) of the Guidelines can be imposed only if the sentencing court finds that: (1) the defendant is an organizer or leader of a criminal activity; and (2) the relevant criminal activity involved five or more participants or was otherwise extensive. *Torres,* 53 F.3d at 1142. To impose a three-level enhancement under section 3B1.1(b), the sentencing court need only find that the defendant was a manager or supervisor (as opposed to an organizer or leader) of a criminal activity which involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(b); *Roberts,* 14 F.3d at 523–24.

▮▮▮▮ The Guidelines specify several factors that the sentencing court should consider in distinguishing a leadership and organization role from one of mere management or supervision. These factors include the following:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the

illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment, n. 4. The Guidelines do not require that each of these factors be satisfied for a section 3B1.1 enhancement to apply. *United States v. Bernaugh,* 969 F.2d 858, 863 (10th Cir.1992).

#### 1. Van Pelt's Role in the Offense

▮▮▮▮ In order to find that the defendant is an "organizer or leader" for purposes of guideline section 3B1.1(a), we have held that certain threshold elements of control or organization must be present. *United States v. Roach,* 978 F.2d 573, 576 (10th Cir.1992). Specifically, the defendant "must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime." *United States v. Reid,* 911 F.2d 1456, 1464 (10th Cir.1990), *cert. denied,* 498 U.S. 1097, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). Van Pelt argues that the district court's findings of fact were not specific enough to support the enhancement. We disagree. As to the first requirement under section 3B1.1(a), the court carefully enumerated the "organizer or leader" factors and made an explicit finding on the record that the evidence adduced at trial and outlined in the presentence report satisfied those factors. Moreover, our review of the record convinces us that the district court's finding was supported by substantial evidence and thus was not clearly erroneous. Although it would have been helpful for the district court to have been more precise in articulating the reasons for the enhancement and to have identified which of the "organizer or leader" factors supported its finding, we conclude the district court's findings as to Van Pelt's "organizer or leader" status were specific enough to justify the enhancement.

As to the second requirement—that the criminal activity either contain five or more participants or be "otherwise extensive"—the district court specifically found that Van Pelt's drug ring was extensive and that it did involve more than five conspirators. Indeed, all seven defendants named in the superseding indictment (including Edith Wacker, who

pleaded guilty) were convicted of the conspiracy charge. We find no clear error in the district court's findings and affirm the imposition of a four-level enhancement under U.S.S.G. § 3B1.1(a).

## 2. Edith Wacker's Role in the Offense

■■ In justifying the three-level enhancement to Edith Wacker's sentence, the district court's sole reference to her involvement in the criminal activity was the following brief statement: "[T]he court has considered the defendant's role in the offense as well as her minimal prior record." (R.O.A. Vol. XLIII, at 5). The court made no findings of Edith Wacker's role as a manager or supervisor, nor did it refer to any factors or evidence by which we could review any such findings had they been made. The court similarly failed to find that the activity specifically involving Edith Wacker had five or more participants or was "otherwise extensive." *See* U.S.S.G. § 3B1.1(b). Our recent cases emphasize that an enhancement based on the defendant's role in the offense will stand only if the record contains " 'a clear picture of the reasoning employed by the sentencing court.' " *United States v. Pelliere,* 57 F.3d 936, 940 (10th Cir.1995) (quoting *Torres,* 53 F.3d at 1143); *see also Roberts,* 14 F.3d at 523 ("Generalized or random observations that help to shade in defendant's role ... cannot alone substitute for the inquiry" under section 3B1.1). Simply "consider[ing] the defendant's role in the offense" without advancing a factual basis to support the enhancement does not satisfy the requirements of section 3B1.1.

■■ The government urges us to affirm Edith Wacker's sentence because "the court's factual conclusion was well-grounded in the record of the case." Appellee's Br. at 11. We are not persuaded. Our cases require the district court to make *findings,* not conclusions. Moreover, even if the record evidence overwhelmingly supports the enhancement, appellate fact-finding cannot substitute for the district court's duty to articulate clearly the reasons for the enhancement. *See Roberts,* 14 F.3d at 523 ("[I]t is not this court's role to make the factual findings necessary to support a sentencing calculation; that is the role of the district court.") (citation omitted). Accordingly, we remand Edith Wacker's sentence to the district court for more specific factual findings on her role as a "manager or supervisor" under section 3B1.1(b).

## B. Drug Quantity

■■ Appellants Cooley and Edith Wacker each argue that the district court erred in calculating the drug quantity attributable to them under U.S.S.G. § 2D1.1. We review the district court's interpretation and application of the Sentencing Guidelines *de novo, Roberts,* 14 F.3d at 523, and review the court's factual findings as to drug quantity for clear error, *United States v. Richards,* 27 F.3d 465, 468 (10th Cir.1994). The sentencing court may estimate quantities attributable to the defendant, so long as the information relied upon has "some basis of support in the facts of the particular case" and bears "sufficient indicia of reliability." *See United States v. Garcia,* 994 F.2d 1499, 1508 (10th Cir.1993) (quotations omitted). The government has the burden of proving the drug quantities by a preponderance of the evidence. *Richards,* 27 F.3d at 468 (10th Cir. 1994).

### 1. LeRoy Cooley

■■ The district court assigned Cooley a base offense level of 30, based upon the approximately 2,000 pounds of marijuana alleged to be the goal of the conspiracy charged in Count 1 of the indictment.[19] Cooley contends that the court should have calculated his offense level based only upon the quantities of marijuana alleged in the substantive possession counts. He points out that the district court did not use the 2,000 pound quantity to determine the base offense levels of appellants Lipp, John Wacker, and Lewis Wacker. Thus, Cooley argues, his

---

19. The 2,000 pound figure was converted to 907.2 kilograms in the Presentence Report. Based on this quantity, Cooley was assigned a base offense level of 30 under the Sentencing Guidelines' drug quantity table. *See* U.S.S.G. § 2D1.1(c)(5) (assigning an offense level of 30 for "at least 700 KG but less than 1,000 KG of Marihuana").

sentence was arbitrary and a misapplication of the Sentencing Guidelines.

Based upon the evidence presented at trial, the district court made specific factual findings regarding the amount of marijuana attributable to Cooley. Among other things, the district court found that Cooley "was knowledgeable of the entire organization and participated in many different roles throughout the conspiracy." (R.O.A. Vol. XXVIII, at 23–24). The district court thus concluded that Cooley had "reasonable and foreseeable knowledge" of the entire 2,000 pound quantity calculated in the presentence report. (*Id.* at 24). By contrast, the district court specifically found that Lipp, John Wacker, and Lewis Wacker could *not* have reasonably foreseen the 2,000 pound quantity, and the court accordingly imposed a lower offense level for their conduct. (R.O.A. Vol. XX, at 15–16; Vol. XXI, at 24–25; Vol. XXII, at 32–33). Our review of the record satisfies us that these findings are not clearly erroneous. We therefore affirm the district court's determination of Cooley's sentence in spite of the disparity. *See United States v. Garza*, 1 F.3d 1098, 1101 (10th Cir.) (disparity between codefendants' sentences "clearly explicable by the facts on the record"), *cert. denied*, —— U.S. ——, 114 S.Ct. 617, 126 L.Ed.2d 581 (1993).

### 2. Edith Wacker

At Edith Wacker's sentencing hearing, the district court adopted the recommendation in the Presentence Investigation Report ("PSR") that the relevant amount for the offense charged in Count 1 of the Indictment was 2,000 pounds (or 907.2 kilograms). The PSR based this quantity on statements made by Edith Wacker to the KBI that she and her coconspirators had planned to harvest 2,000 pounds of marijuana for distribution but were thwarted by police prior to reaching that goal. Edith Wacker contends that the district court's adoption of the PSR recommendation was clearly erroneous. First, she argues that because the statement made to

the KBI was unreliable and uncorroborated, it did not bear "sufficient indicia of reliability." Second, she contends that the evidence presented at her coconspirators' trial was insufficient to support a finding that the conspiracy involved 2,000 pounds of marijuana.

 We agree with the district court's calculation of the drug quantities attributable to Edith Wacker. First, we find no error in the court's reliance upon Edith's own estimate of the 2,000 pound goal of the conspiracy. A district court may base its estimate of drug quantity upon a defendant's own statements and admissions. *See, e.g., United States v. Washington*, 11 F.3d 1510, 1516–17 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1404, 128 L.Ed.2d 76 (1994); *United States v. Cox*, 985 F.2d 427, 431 (8th Cir.1993); *United States v. Colon*, 961 F.2d 41, 43 (2d Cir.1992). Moreover, because the evidence showed that Edith Wacker was the person responsible for keeping the operation's records, her statements as to drug quantity are particularly reliable in forecasting the total amount of the harvest.

Second, even without Edith Wacker's statement, we believe the evidence contained in the record more than supports the district court's 2,000 pound estimate. Persuasive evidence presented at the codefendants' trial showed that the drug operation was producing extremely large quantities of marijuana. Edith Wacker's record notebook, the size of the Wacker farm, the number of marijuana plants seized from the farm, the number of coconspirators involved, and, most importantly, the large quantities of processed marijuana seized [20] all support the district court's estimate. In light of this substantial evidence, we cannot say the district court's findings were clearly erroneous.

### C. Enhancement Based on Set Aside Conviction

Lipp contends that the district court erroneously enhanced his sentence on the basis of a 1972 drug conviction sustained under the

---

20. For example, government agents twice seized quantities of processed marijuana in excess of one hundred pounds from the Wacker farm. In addition, the KBI in March of 1991 seized several fifty-five gallon barrels full of marijuana from

the Wacker farm. Finally, John and Lewis Wacker admitted to government agents after their arrest that they had burned approximately 700 pounds of marijuana because they feared that they were under police surveillance.

Federal Youth Corrections Act ("FYCA"). The conviction was set aside in 1973 pursuant to the FYCA's provision granting a district court discretion to "automatically set aside" a conviction by unconditionally discharging a youth offender from probation prior to the expiration of the period fixed by the court. 18 U.S.C. § 5021(b) (repealed 1984). Lipp argues that a sentence that has been "set aside" under the FYCA has been "expunged," and therefore may not be counted in determining his criminal history category under the Sentencing Guidelines. *See* U.S.S.G. § 4A1.2(j) ("Sentences for expunged convictions are not counted [in the criminal history calculation].").[21]

 The Sentencing Commission has recognized a distinction, for purposes of the Guidelines, between convictions that are "set aside" and those that are "expunged." The comment to Section 4A1.2 provides, in part:

> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, *e.g.*, in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted....

U.S.S.G. § 4A1.2, comment n. 10. A conviction that was set aside under the FYCA, we conclude, was "set aside ... for reasons unrelated to innocence or errors of law" and therefore was not "expunged" for purposes of the Guidelines.

 The legislative history of the FYCA indicates that the purpose of allowing a conviction to be set aside was to offer the youthful offender " 'a new start.' " *United States v. Ashburn*, 20 F.3d 1336, 1343 (5th Cir.) (quoting 107 Cong.Rec. 8709 (1961) (statement of Sen. Dodd)), *reinstated in relevant part on reh'g en banc*, 38 F.3d 803 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995). However, we agree with the D.C. and Fifth Circuits that "if a juvenile offender turns into a recid-

ivist, the case for conferring the benefit dissipates," *United States v. McDonald*, 991 F.2d 866, 872 (D.C.Cir.1993) (quoting *Barnes v. United States*, 529 A.2d 284, 286–89 (D.C. 1987)), and consideration of the conviction for sentencing purposes is appropriate, *Ashburn*, 20 F.3d at 1343.

The distinction between a conviction that is set aside under the FYCA and one that is expunged is further supported by this Circuit's established definition of the word "expunged." We have explained that "[w]ith respect to criminal records, expunction refers to the process of sealing or destroying the record of a criminal conviction after expiration of a certain time." *United States v. Johnson*, 941 F.2d 1102, 1111 (10th Cir.1991). The majority of circuits addressing the issue have determined that the FYCA "does not allow a court to authorize the actual physical obliteration of the record of conviction." *Ashburn*, 20 F.3d at 1341 (listing cases); *see also United States v. Gardner*, 860 F.2d 1391, 1399 (7th Cir.1988) (listing cases), *cert. denied*, 490 U.S. 1023, 109 S.Ct. 1751, 104 L.Ed.2d 187 (1989).

Finally, we note that of the four circuits to consider the issue, *see United States v. Ashburn*, 20 F.3d 1336 (5th Cir.1994); *United States v. Gardner*, 860 F.2d 1391 (7th Cir. 1988); *United States v. McDonald*, 991 F.2d 866 (D.C.Cir.1993) (applying the reasoning of a D.C. Court of Appeals case interpreting the FYCA to a parallel district statute); and *United States v. Kammerdiener*, 945 F.2d 300 (9th Cir.1991), only the Ninth Circuit has held that a set aside under the FYCA is an expungement for purposes of section 4A1.2(j). *See Kammerdiener*, 945 F.2d at 301. The Ninth Circuit relied primarily on its interpretation of the Supreme Court's decision in *Tuten v. United States*, 460 U.S. 660, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983), as precluding the use in sentencing of a conviction set aside under the FYCA. We do not find *Tuten* controlling here. In that case, decided before the Sentencing Guidelines were promulgated, the Court held that a defendant's conviction had not been set aside

---

**21.** We have determined that Lipp adequately raised this issue at sentencing and thus we reject the government's claim of waiver.

under the FYCA, and in dicta equated the term "set aside" with the term "expunged." *Id.* at 665 n. 9, 103 S.Ct. at 1415 n. 9. We believe that the Sentencing Guidelines have since clarified that, at least for Guideline purposes, the two terms are not interchangeable. Because we find that the juvenile conviction was not expunged for purposes of the Sentencing Guidelines, we hold that it was properly considered by the district court in determining Lipp's criminal history.

### IV.

For the foregoing reasons, we REVERSE the convictions of Perl. Van Pelt, LeRoy Cooley, Susan Boyle, Lewis Wacker and John Wacker of the firearms offense charged in Count 7, and we REMAND for a new trial only as to Count 7 in order to determine whether these five defendants "used" Edith Wacker's .22 pistol during and in relation to a drug trafficking offense within the meaning of 18 U.S.C. § 924(c). We also REVERSE Michael Lipp's conviction as to Count 2, and we REVERSE the convictions of Perl Van Pelt, LeRoy Cooley and Susan Boyle as to Count 12. We AFFIRM the sentence of Michael Lipp as to all counts in the superseding indictment other than Counts 2 and 7. We also AFFIRM the sentences of Perl Van Pelt and LeRoy Cooley as to all counts in the superseding indictment other than Counts 7 and 12. However, we REMAND the sentence of Edith Wacker, with instructions that the district court specifically articulate the factual basis and findings necessary for imposing the "manager or supervisor" enhancement under U.S.S.G. § 3B1.1(b). We do not disturb the district court's findings of the drug quantity attributable to Edith Wacker's offense conduct. In all other regards, we AFFIRM the ruling of the district court appealed to us in these seven appeals.