**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 20, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

ANDRE J. TWITTY,

       Defendant - Appellant.

No. 14-1173
(D.C. No. 1:13-CR-00076-RBJ-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **McKAY**, **McHUGH**, and **MORITZ**, Circuit Judges.

Defendant Andre J. Twitty appeals pro se from his conviction on two counts of

mailing threatening communications in violation of 18 U.S.C. § 876(c).  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

While serving a sentence for making bomb threats and threatening a federal

officer, Mr. Twitty sent threatening letters to federal judge Peter Dorsey and to a

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

United States Attorney's Office in Georgia. Judge Dorsey had denied several

attempts by Mr. Twitty to obtain post-conviction relief from his previous sentence.

Mr. Twitty's January 2011 letter to him read in pertinent part as follows:

> Peter,
>
> NEVER! think! I have any respect for you, the fucking Federal Judicial
> or the Bullshit U.S. Government!! Now, as long as the LAW states
> what does it! Regarding Rule 60(b)(4), then you and your Redneck staff
> can continue to issue this same Bullshit order all that you want. There
> is only 27 [months] left to play this game And as long as I already have
> those WHITE Motherfuckers in the Eleventh Circuit on Lock, then I
> have you and the Second Circuit as well.
>
> Its 4:00 AM, And I am thinking about the little *9 yr old girl that got
> shot in Tucson. And NO! I don't give a fuck. The point is, I was
> reminded of something Wayne Williams!! allegedly stated during the
> Atlanta child murders!
>
> "How many 'Niggers' can you stop from being born if you Kill one
> little Black Boy?!!"
>
> So, I was thinking the same about REDNECKS!!! "How many crackers
> can you keep from being born, if someone were to Blow-up Daycare
> centers." one can only wonder.
>
> Now, back to Tucson! They made a big deal about Judge Roll being
> killed. Like who gives a Fuck. To paraphrase the Klu Klux Klan "Just
> one less federal Dickhead to worry about! Remember, when . . .
> [Second] Circuit Judge Moody got Blown up back in the 80's. Funny as
> shit!!
>
> Now, go call the U.S. Marshals. like I give a Fuck! As long as I have
> that stolen Remington .700 and the McMillian TAC-.50 cal (2) M-16
> (A2s) with (2) M-32 grenade launcher(s) with a crate of 40MM "Hell
> Hound" shells. And the Benelli & Mossberg shotgun(s). Not to mention
> my trusty Colt .357 Python with the teflon coated Hollow Points. All I
> need to do now is steal a new PDW .6MM And I'm set. So Fuck the
> FBI, USM and anyone else! And that RICIN!! is still in a safe place!

So Justice will be mine! Even if I have to DIE!! to get it! . . . You all don't respect the law. And neither do I. So lets just wait!! Time is not a factor!"

R., Vol. 3 at 450-51 (underlining and non-alphabetical markings omitted).[1]

The United States Attorney's Office in the Northern District of Georgia had previously prosecuted Mr. Twitty for making threatening statements. Assistant United States Attorney David Leta handled the prosecution and prepared briefs filed in response to Mr. Twitty's appeal and attempts to obtain post-conviction relief. Judge J. Owen Forrester presided at the trial. Mr. Twitty mailed a letter to Sally Yates, the United States Attorney for the Northern District of Georgia, which read in part as follows:

> In light of Former Federal Judge John Roll getting his Punk ass brains blown the fuck out! Which in my 'opinion' Should happen to a lot more federal bastards Starting with the Punk ass *Supreme Court Bastards," then Flow down to the Eleventh Circuit bitch ass Judges then over to the federal Punks in the district court then of course, I would love to see 'someone' poke a McMillian TAC-50 with some M107 API" and Blow" AUSA David M. Leta motherfucking Head OFF!!! And of course, we cannot forget about those F.B.I lying motherfuckers! . . . I am Praying for the day when "somebody" Locks-N-Load an M82A3 or M2 lite .50 cal on these bastards! And blows their fucking brains outs!!! That is my wish!!!
>
> . . .

---

[1]    We have included the pertinent portions of Mr. Twitty's communications without correction of grammatical errors or redaction of offensive language. Some punctuation marks in the letters reproduced in the record are unclear; we have deciphered and reproduced them as best we can. We omit various punctuation marks and capitalization when quoting the letters later in this order and judgment.

So, since you all are not going to obey the law. The[n] FUCK!! the law!! You know, I have been doing some real hard thinking about my upmost HATRED of Rednecks!!, Niggers!! and wetbacks!! as well as Homo(s) and the rest of the other disgusting bastards in 'Your' government!!

Then I started having these "DREAMS" where I am tying "Leta" over a table!! and taking a can of gasoline and Pouring it all over his white!! ass!! and setting the motherfucker on fire!! He screams while I stand there laughing . . . Then the 'DREAM' switches. Now, 'Leta' is staked to the ground, with his extra-crispy ass! mumbling!! And I take this "AX", and start cutting the motherfucker into tiny pieces!! And in another 'DREAM' I was walking down Northside Drive. And I went into this House and Found Leta!! duct-taped to a chair, he and [Judge] Forrester!! And I took this Benelli Pump shot-gun. And blew his head off!! And the 'DREAM' was so vivid, that I could actually Feel and smell the motherfuckers Blood on me!! Then I shot [Judge] Forrester in his nuts! then Put the barrel to his left eye and BAM! Brains Just blew against the wall!! Then I woke up laughing.

THAT'S CALL PURE HATRED!!!!!!!!!

No one lies on me No one!!! especially not some Federal Bastard. So, You all continue to lie and cover up!! And I will keep my mind on that dead fuck nigga AUSA they found shot to death in 2003 in that ditch! in Pennsylvania!! And all of the Federal Bldgs and employees that walk in and out those doors, all over this Bullshit country. Yeah! I will just put my mind on that! And I will think everyday! how Leta!! really thinks! he is going to get away with this Lie!! Then once I get Justice!! It will be time to go to my secret place! and commit "suicide" depriving You Punks of any get back Because No one lies on me No one!! . . .

P.S. Daycare centers!! hmmm!

*Id.* at 454-55 (underlining and non-alphabetical markings omitted).

- 4 -

As a result of these letters, a jury convicted Mr. Twitty of two counts of mailing threatening communications in violation of 18 U.S.C. § 876(c).[2] The district court sentenced him to 60 months' incarceration on the first count, and 108 months on the second count, to be served concurrently.

## II. ANALYSIS

We construe Mr. Twitty's pro se brief liberally. *See United States v. Davis*, 339 F.3d 1223, 1225 (10th Cir. 2003). He challenges whether probable cause existed to arrest, indict, and prosecute him for the offenses charged; whether there was sufficient evidence to convict him of them; and whether his prosecution and conviction violated the First Amendment. He also challenges the prosecutor's reference to Oklahoma City bomber Timothy McVeigh during closing argument.

We focus on the issues concerning his trial and conviction, as these resolve or moot his other issues. For example, to the extent Mr. Twitty challenges the existence of probable cause to indict him, this challenge was mooted by the jury's guilty verdict. *See United States v. Hillman*, 642 F.3d 929, 936 (10th Cir. 2011) ("[A]fter a petit jury's guilty verdict we will not consider a defendant's arguments regarding errors affecting only the grand jury's finding of probable cause, because those claims

---

[2]  Mr. Twitty was charged with a third § 876(c) count, resulting from another letter he sent, but the jury acquitted him of that count. The third count is not at issue in this appeal.

are mooted by the petit jury's findings of guilt.").[3] For the same reasons sufficient evidence supports the jury's verdict and that verdict did not violate the First Amendment—reasons which we discuss *infra*—Mr. Twitty's arrest and prosecution were supported by probable cause and did not violate the First Amendment.

The most essential facts proved at trial—the words used in Mr. Twitty's letters—are undisputed. The sufficiency of the evidence to convict him turns on whether his actions proved at trial established his guilt of each element of the crimes charged. *See United States v. Jones*, 768 F.3d 1096, 1101 (10th Cir. 2014) (stating reviewing court determines "whether the evidence, if believed, would establish each element of the crime." (internal quotation marks omitted)). "We review the denial of [Mr. Twitty's] motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the government." *United States v. Burkley*, 513 F.3d 1183, 1190 (10th Cir. 2008). In assessing the sufficiency of the evidence, we ask whether "any rational trier of fact could have found [Mr. Twitty] guilty of the crime beyond a reasonable doubt." *United States v. Cooper*, 654 F.3d 1104, 1115 (10th Cir. 2011) (internal quotation marks omitted). We have generally applied these standards for evaluating evidentiary sufficiency in cases involving threatening communications, notwithstanding the special First Amendment concerns involved in such cases. *See*

---

[3] Mr. Twitty contends that the verdict did not moot his challenge to the grand jury proceedings because the government committed fraud in presenting its case to the grand jury. But the alleged "fraud" centers on the government's purported misrepresentation to the grand jury that his letters contained true threats—the very issue resolved against him by the petit jury after trial.

- 6 -

*United States v. Wheeler*, No. 14-1031, slip op. at 9-11 (10th Cir. Jan. 15, 2015) (discussing appropriate standard of review in "true threat" case).

The statute under which Mr. Twitty was convicted, 18 U.S.C. § 876(c), provides that

> [w]hoever knowingly . . . deposits [in a post office or authorized mail depository] or causes to be delivered [by the U.S. Postal Service] any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both. If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by [18 U.S.C.] section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both.

Mr. Twitty brings two basic challenges to the sufficiency of the evidence against him. He argues that his actions in delivering the letters to prison authorities, which they then mailed, did not constitute "knowing deposit" or "knowing delivery" of a threatening communication within the meaning of the statute. He also argues that his letters did not contain "true threats" and that his conviction therefore was both unsupported by sufficient evidence and in violation of the First Amendment.

**1. Delivery of a Threatening Communication**

Mr. Twitty argues that he did not "knowingly . . . deposit or cause[] to be delivered" the letters containing the alleged threats. He contends he had "no control over whether his mail would ever be mailed out of the Federal Bureau of Prisons," Aplt. Opening Br. at 14 (internal quotation marks and underlining omitted), because a

- 7 -

counselor picked up his mail, and it was then inspected before it was mailed out by employees in the mailroom.

Mr. Twitty cites the testimony of Michael McAlister, a special investigative technician at the ADX in Florence, Colorado where Mr. Twitty was incarcerated in 2011. Mr. McAlister testified that when the threatening letters were mailed, Mr. Twitty was under a mail restriction. Under the restriction, all of his outgoing legal and special mail was sent to Mr. McAlister for review. As part of the review process, Mr. McAlister would contact the intended recipient and seek his or her permission to open the mail. If permission was not granted or if he could not reach the recipient, Mr. McAlister would mail the letter unopened. If the recipient's permission was granted, he would open the mail and read it to the recipient. If the letter read to the recipient did not contain a threat, Mr. McAlister would reseal the envelope and send the mail to its recipient. If it did contain a threat, it would not be sent unless the recipient requested that it be mailed.

Mr. Twitty contends that he did not knowingly mail or cause to be mailed the threatening letters; he merely provided them to Mr. McAlister, who made the determination concerning whether they should be mailed and then either mailed them or declined to do so. Mr. Twitty argues that because of the mail restriction, he could not know that a threatening communication would actually be mailed to the recipient.

This argument lacks merit. It was Mr. Twitty who knowingly wrote and addressed the letters containing the threats and provided them to prison authorities to

be mailed. He points to no evidence from which he could reasonably have concluded that the prison's legal mail procedures would prevent his threatening letters from entering the United States mail. According to Mr. McAlister, there were several ways that a letter containing threats could end up being mailed even if the inmate were under a mailing restriction, including circumstances when the recipient could not be reached. And in fact, that was the case here: Mr. McAlister testified that he did not open either of the letters at issue in this case, but sent them on unopened.

Mr. Twitty also argues that once Mr. McAlister took possession of his mail, Mr. Twitty lost physical control of whether the letter was actually mailed out. He notes Mr. McAlister's testimony that an inmate cannot himself take a letter to the mailroom. But the statute requires only that the defendant "cause[d] [the letter] to be delivered." 18 U.S.C. § 876(c). That requirement clearly was satisfied when Mr. Twitty provided the letters to his counselor to be mailed. *See United States v. Davis*, 926 F.2d 969, 971 (10th Cir. 1991) (finding sufficient evidence to support § 876 conviction where defendant's acquaintances testified that they mailed letters at the defendant's request).

### 2. "True Threat"

A statute "which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." *Watts v. United States*, 394 U.S. 705, 707 (1969). The First Amendment, therefore, permits conviction under

Section 876(c) only if the communication at issue constitutes a "true threat."

*See Virginia v. Black*, 538 U.S. 343, 359-60 (2003) (explaining that the First

Amendment "permits a state to ban a 'true threat'").  A true threat is one that

communicates a "serious expression of an intent to commit an act of unlawful

violence to a particular individual or group of individuals."  *Id.* at 359.

A true threat does not require the speaker to "actually intend to carry out the

threat."  *Id.* at 360.  Nor does it require proof that he or she "had the apparent ability

to carry out the threat. . . . It is the making of the threat and not the intention to carry

out the threat that violates the law."  *United States v. Viefhaus*, 168 F.3d 392, 395-96

(10th Cir. 1999).

It is also not necessary that a true threat be made directly to the proposed

victim.  *United States v. Martin*, 163 F.3d 1212, 1216 (10th Cir. 1998) (applying

"true threat" analysis to conviction under 18 U.S.C. § 115).  But the statement must

be one that a reasonable person under the circumstances would understand "as a

declaration of intention, purpose, design, goal, or determination to inflict punishment,

loss, or pain on another."  *Viefhaus*, 168 F.3d at 395.[4]  "Whether a statement

---

[4]    Recently we determined as a matter of first impression that in any true-threat prosecution the First Amendment requires that the defendant subjectively intended the recipient to feel threatened.  *United States v. Heineman*, 767 F.3d 970, 978 (10th Cir. 2014); *see also Wheeler*, No. 14-1031, slip op. at 7  (discussing rule in *Heineman*, which is now "Tenth Circuit law.")  This subjective-intent issue is also currently pending before the Supreme Court.  *See Elonis v. United States*, 134 S. Ct. 2819 (2014) (mem.); *Wheeler*, slip op. at 7 n.2 (noting pending issue in *Elonis*) Although he mentions *Elonis* in his briefing in this court, *see* Aplt. Br. at 17,

(continued)

constitutes a 'true threat' is a fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1167-68 (10th Cir. 2009). "[A]bsent an unusual set of facts, the question whether statements amount to true threats is a question generally best left to a jury." *Wheeler*, No. 14-1031, slip op. at 11 (internal quotation marks omitted).

Both the letters at issue here, taken as a whole, satisfy the standard for a true threat. In the letter to Judge Dorsey, Mr. Twitty informed the judge that he had him

---

Mr. Twitty fails to show that he raised an issue concerning his subjective intent in district court. It was his duty to object to the omission of the alleged element from the jury instructions, *see* Fed. R. Crim. P. 30(d), and to challenge the sufficiency of the evidence concerning this issue, and his failure to object means we may review the issue only for plain error, *see* Fed. R. Crim. P. 52(b). But he has failed to attempt to show how this alleged error even meets the plain error test. Accordingly, we could decline to consider the argument altogether. *See Abernathy v. Wandes*, 713 F.3d 538, 551 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 1874 (2014).

But even if we were to review the issue of Mr. Twitty's subjective intent for plain error, it would fail that test, for any alleged error was not "plain." "An error is plain if it is clear or obvious under current, well-settled law. In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) (internal quotation marks omitted). In *Heineman* we determined that the Supreme Court's decision in *Virginia v. Black*, 538 U.S. 343 (2003) required a showing of subjective intent in any true-threat prosecution. *See Heineman*, 767 F.3d at 975-79. But this interpretation of *Black* was far from "clear or obvious," and we acknowledged that several "[o]ther circuits have declined to read *Black* as imposing a subjective-intent requirement." *Id.* at 979. Thus, Mr. Twitty cannot show an error that was "plain" in the district court's failure to instruct the jury concerning subjective intent, or in its failure to acquit him due to an alleged lack of sufficient evidence on that issue.

"on lock." R., Vol. 3 at 450. After discussing several acts of violence, including the killing of a judge, Mr. Twitty provided a list of deadly weapons and poison he claimed he would have access to after his release. He asserted he did not respect the law and that he had "only 27 months left to play this game" (i.e., until his release from incarceration). *Id.*[5] He claimed that "justice will be mine even if I have to die to get it." *Id.* at 451 (punctuation omitted).

Similarly, the letter that Mr. Twitty sent to the United States Attorney in Georgia contained sufficient evidence of true threats. Mr. Twitty noted the killing of a federal judge and stated that this "should happen to a lot more federal bastards." *Id.* at 454 (underlining omitted). He then described his "dreams." *Id.* at 455. The "dreams" involved graphic descriptions of Mr. Twitty burning, chopping up, and shooting Assistant United States Attorney (AUSA) David Leta and Judge Forrester. He then stated that he would keep another murdered AUSA "in mind," along with other federal employees walking in and out of federal buildings, and "how [AUSA David] Leta really thinks he is going to get away with this lie." *Id.* at 455. He stated he would "get justice," then go to his "secret place" and commit suicide, "depriving you punks of any get back." *Id.* (underlining omitted).

Mr. Twitty's attempts to characterize these letters as First Amendment "advocacy" rather than true threats are unconvincing. A reasonable jury could have

---

[5] A reasonable jury could reject Mr. Twitty's insistence that this phrase referred only to his intention to file a lawsuit after his release from prison. Guns and poison are not needed to bring legal proceedings.

concluded that Mr. Twitty was threatening to commit acts of violence rather than merely advocating that such acts take place or merely encouraging others to consider committing them.

Nor does the fact that individual sentences in each letter, considered in isolation, do not expressly state a plan or intent to commit acts of violence mean that letter, taken as a whole, does not contain "true threats." Recipients of threatening letters are not required to read them in a hyper-technical fashion, parsing individual sentences and ignoring the context of the statements they contain. They are not required to dismiss statements that a reasonable person would consider threatening when read as a whole and in context. Testimony by witnesses at trial that specific passages in each letter did not expressly state Mr. Twitty's intention to commit acts of violence against particular victims did not prevent a reasonable jury from determining that, taken as a whole, each letter contained "true threats." This is particularly true when we consider testimony from some of those same witnesses that in their opinion, the letters taken as a whole did contain threats against the identified individuals.

In addition, the fact that at times Mr. Twitty described "dreams" he previously had did not strip his letter addressed to the United States Attorney's Office of its threatening character. In light of his statements that he would keep a murdered AUSA in mind and "get justice," a reasonable recipient of the letter could conclude that he had expressed an intent to bring his "dreams" to fruition by harming Mr. Leta,

Judge Forrester, or other federal employees. In sum, the evidence sufficiently supported the jury's determination that the letters contained "true threats."

### 3. Reference to Timothy McVeigh

During closing argument, the prosecutor made the following reference to Timothy McVeigh, the Oklahoma City bomber:

> Charysse Alexander walks in and out, like the defendant said, of these federal buildings every day. David Leta walks into these federal buildings every day. . . . And then [Mr. Twitty] concludes by ["]day care centers, hmm,["] and who wouldn't, who walks into these buildings every day . . . think as Charysse Alexander thought about those poor children and all these federal employees blown up by Timothy McVeigh in Oklahoma City. The First Amendment? As cherished as it is [it] does not protect that.

R., Vol. VI at 529.[6]

Mr. Twitty did not object at trial to this statement. Accordingly, we review it only for plain error. The plain error standard requires him to demonstrate "(1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012). He has failed to make the required showing. The prosecutor's statement explained to the jury why the curt reference to day care centers in Mr. Twitty's letter to the United States Attorney's

---

[6]      Charysse Alexander, who testified at trial, is an AUSA in Atlanta, Georgia whose duties include overseeing security issues in the United States Attorney's Office for the Northern District of Georgia. As part of her investigative duties she was given a copy of Mr. Twitty's letter to that office, which she read and considered a threat.

Office could be pursued as threatening by the federal employees who received the letter. Thus, even if it was plain error to permit the statement, Mr. Twitty fails to show that it affected his substantial rights or called into question the fairness, integrity, or public reputation of his trial.

## CONCLUSION

The district court's judgment is affirmed. Mr. Twitty's motions for release pending appeal are denied.

Entered for the Court


Carolyn B. McHugh
Circuit Judge