**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Andre J. TWITTY, Defendant–**
**Appellant.**

**No. 14–1173.**

United States Court of Appeals,
Tenth Circuit.

Feb. 1, 2016.

J. Bishop Grewell, Office of the United States Attorney, Denver, CO, for Plaintiff–Appellee.

Andre J. Twitty, Florence, CO, pro se.

Before McKAY, McHUGH, and MORITZ, Circuit Judges.

## ORDER AND JUDGMENT [*]

CAROLYN B. McHUGH, Circuit Judge.

This matter comes before us on remand from the United States Supreme Court for further consideration in light of its decision in *Elonis v. United States*, —— U.S. ——, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015). Prior to *Elonis*, we affirmed Defendant–Appellant Andre J. Twitty's conviction on two counts of making threatening communications in violation of 18 U.S.C. § 876(c). *See United States v. Twitty*, 591 Fed.Appx. 676, 677, 684 (10th Cir.2015) *(Twitty I)*, *vacated*, —— U.S. ——, 136 S.Ct. 90, 193 L.Ed.2d 7 (2015) (Mem.). We denied his petition for rehearing and rehearing en banc and his motion to recall the mandate.

Mr. Twitty subsequently filed a petition for writ of certiorari in the Supreme Court. On June 1, 2015, the Supreme Court decided *Elonis*, in which it clarified the *mens rea* requirement for convictions under a different threat statute, 18 U.S.C. § 875(c).[1] In *Elonis*, the Supreme Court, while declining to consider any First Amendment issues, *see* 135 S.Ct. at 2012, determined that the mental state (*mens rea*) requirement under § 875(c) was satisfied where "the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat," *id.* On October 5, 2015, the Supreme Court vacated our judgment in *Twitty I* and remanded for further consideration in light of *Elonis*.

## BACKGROUND

We previously stated the facts involved in this case, and will not repeat them here other than as necessary to address the issue before us. In *Twitty I*, we noted that Mr. Twitty had made reference to *Elonis* (which had not yet been decided) in his opening appeal brief, in support of an argument that his statements were entitled to protection under the First Amendment. 591 Fed.Appx. at 681 n. 4. But we declined to consider an *Elonis*-based argument on the merits. We determined that Mr. Twitty had failed to show that he raised an issue in district court concerning his subjective intent to threaten the victims of his letters, and failed to satisfy the plain-error standard to obtain review of that issue. *Id.*

After the Supreme Court vacated our decision and remanded, we ordered the parties to file supplemental briefs addressing whether the Supreme Court's decision in *Elonis* requires reversal of Mr. Twitty's conviction. Having reviewed these briefs and the applicable law, we vacate Mr.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

[1] We note that § 876(c) contains different language than § 875(c). Most notably, § 876(c) contains express *mens rea* language concerning the delivery element, *see* 18 U.S.C. § 876(c) ("Whoever *knowingly* ... deposits or causes to be delivered ... any communication"), but § 875(c) does not. The Supreme Court's broad language in *Elonis* persuades us that a *mens rea* element concerning the defendant's subjective intent to threaten, similar to that discussed in *Elonis*, must also be alleged and proved to sustain a conviction under § 876(c).

Twitty's conviction and remand for further proceedings.

## DISCUSSION

The government argues that Mr. Twitty's *Elonis* arguments should be reviewed only for plain error. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Frost*, 684 F.3d 963, 971 (10th Cir.2012) (internal quotation marks omitted). In light of our decision in *United States v. Heineman*, 767 F.3d 970 (10th Cir.2014),[2] which was issued before our decision in *Twitty I*, the government concedes that Mr. Twitty can demonstrate the first two elements: (1) an "error" (2) that was "plain" at the time of the appeal.

But the government argues that Mr. Twitty cannot establish the third and fourth elements of the plain-error test: *i.e.*, he has not identified an error that affects his substantial rights and that must be corrected to avoid a miscarriage of justice. The government contends that Mr. Twitty's subjective intent to issue a threat, or knowledge that his statements would be viewed as a threat, was established at trial by sufficient evidence.

In Mr. Twitty's supplemental briefing, he argues that he has met all four elements of the plain-error test. He further argues that the Double Jeopardy Clause bars his retrial because the government put on no evidence at trial on the subjective-intent element. Finally, he argues that the indictment in his case was jurisdictionally defective because it failed to include an allegation that he sent the threatening communications with an intent to issue a threat or with knowledge that the communications would be viewed as threats.

### 1. Plain Error Review

In *Twitty I*, we noted Mr. Twitty's failure to show that he satisfied the plain-error standard concerning this issue, and concluded that we could treat his silence as forfeiture of the issue. *See Twitty I*, 591 Fed.Appx. at 681 n. 4 (citing *Abernathy v. Wandes*, 713 F.3d 538, 551 (10th Cir. 2013)). The government does not attempt to defend this approach to the plain-error problem. We will therefore consider the issues without consideration of this earlier forfeiture. *See United States v. De Vaughn*, 694 F.3d 1141, 1144 (10th Cir. 2012) (stating that where defendant has forfeited a non-jurisdictional argument, the government may "waive the waiver" by failing to assert the forfeiture (brackets omitted)).

### A. Scope of the Issues

The government urges us to treat Mr. Twitty's argument solely as a challenge to the sufficiency of the evidence. We agree that he has challenged the sufficiency of the evidence. But his *Elonis*-based contentions also target the faulty jury instructions given at his trial. This is clearly true of the arguments he makes in his supplemental brief, and at least implicitly true of the argument he made in *Twitty I*. *See* Aplt. Supp. Br. at 7–8 (arguing instructions given at his trial were erroneous under *Elonis* ); Aplt. Opening Br. at 13–14 (addressing subjective-intent element in light of First Amendment requirements, citing *Elonis* ); Aplt. Reply Br. at 13 (arguing that he preserved jury-instruction

---

**2.** In *Heineman*, this court determined that "a defendant can be constitutionally convicted of making a true threat only if the defendant *intended* the recipient of the threat to feel threatened." *Heineman*, 767 F.3d at 978.

challenge concerning subjective intent); *see also Elonis,* 135 S.Ct. at 2007 (noting case involved challenge to omitted jury instruction concerning subjective intent). We therefore construe Mr. Twitty's pro se *Elonis* argument as encompassing both (1) a challenge to the omission of the subjective-intent element from the district court's instructions to the jury, and (2) a challenge to the sufficiency of the evidence at trial.

This construction of Mr. Twitty's arguments is appropriate for another reason. In its supplemental brief, the government only argues elements three and four of the plain-error test. It concedes that Mr. Twitty can satisfy the first two elements of the test. *See* United States Supp. Br. at 4–5 (noting "error" that is "plain"). But if the only issue before us involves the sufficiency of the evidence, and if the government concedes that such an error occurred, it is difficult to see how it can show that Mr. Twitty fails to meet the remaining plain-error requirements for reversal. *See United States v. Gallegos,* 784 F.3d 1356, 1359 (10th Cir.2015) ("[A] conviction in the absence of sufficient evidence will almost always satisfy all four plain-error requirements."); *United States v. Rufai,* 732 F.3d 1175, 1195 (10th Cir.2013) (holding that where evidence in case was insufficient to demonstrate beyond a reasonable doubt one of the essential elements of crime charged, fourth element of plain-error test was satisfied); *United States v. Kaufman,* 546 F.3d 1242, 1263 (10th Cir. 2008) ("[A] conviction in the absence of sufficient evidence of guilt is plainly an error, clearly prejudiced the defendant, and almost always creates manifest injustice." (internal quotation marks omitted)).

In fact, we do not believe the government intended to concede that the evidence was insufficient. The government argues elsewhere in its briefing that there *was* sufficient evidence to support Mr. Twitty's conviction. We therefore conclude that the government's concession that an "error" occurred that was "plain" should be viewed as an acknowledgement that the district court failed to correctly instruct the jury concerning Mr. Twitty's subjective intent.[3] Such an understanding is also consistent with the government's arguments concerning the third and fourth prongs of the plain-error test. *See* United States Supp. Br. at 7 (citing *United States v. Gonzalez Edeza,* 359 F.3d 1246 (10th Cir.2004), 1251 (10th Cir.2004) and *Johnson v. United States,* 520 U.S. 461, 469–70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), two cases holding that *instructional error* satisfied first two prongs of plain-error test, but failed fourth prong). Accordingly, for all of the foregoing reasons, we will consider both the jury-instruction and substantial-evidence issues in this decision.

### B. Jury Instruction Issue

■ As noted, the government skips to the third elements of the plain-error test concerning this issue. To satisfy the third element of the plain-error test, the appellant must show that the error affected the outcome of the district court proceedings. *United States v. Kalu,* 791 F.3d 1194, 1205 (10th Cir.2015). "To meet this burden, [he] must show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* (internal quotation marks omit-

---

**3.** It is possible that the government meant only to concede the isolated point that the sufficiency-of-the-evidence issue was "plain" in light of *Elonis. See United States v. Powell,* 767 F.3d 1026, 1035 (10th Cir.2014) (resolv-ing issue of statutory interpretation in determining whether sufficiency-of-the-evidence issue was plain). But this does not explain its failure to contest the first plain-error element: whether an error occurred.

ted). Mr. Twitty has made the required showing.

We note, first, that determining the defendant's subjective intent requires a jury to address considerations not directly relevant to an objective reasonable-person standard. The two inquiries involve separate and distinct elements. *See United States v. Wheeler*, 776 F.3d 736, 743 n. 3 (10th Cir.2015). To satisfy the reasonable-person standard for what constitutes a true threat, a jury need only find that the defendant's statement was "one that a *reasonable person* in the circumstances would understand as a declaration of intention, purpose, design, goal, or determination to inflict bodily injury on another." *Id.* (emphasis added) (brackets and internal quotation marks omitted). By contrast, determination of a defendant's subjective intent for purposes of *mens rea* often requires consideration of the mental state of an *unreasonable* person, whose words, though objectively threatening, may involve "ranting and raving" and "venting … frustration" rather than subjectively intended threats. *United States v. Houston*, 792 F.3d 663, 668 (6th Cir.2015).

The language of Mr. Twitty's letters formed the primary evidence against him. On the issue of subjective intent, these letters are far from unambiguous. They contain a torrent of angry, hyperbolic, and bizarre statements couched in terms of dreams, hopes, and aspirations. *See Twitty I*, 591 Fed.Appx. at 677–79 (quoting letters). To be sure, the dreams expressed in the letters are nightmares, and the hopes and aspirations they contain are twisted, violent, and frightening. The words certainly are sufficiently threaten-

ing to satisfy an objective standard. But even so, we cannot say that there is not a reasonable probability that a properly instructed jury could have concluded that Mr. Twitty did not subjectively intend his letters as threats, or (put another way) that Mr. Twitty would have had nothing to work with in contesting this issue before a properly instructed jury. *See Houston*, 792 F.3d at 669 (finding plain-error test on *Elonis* issue satisfied where "the defendant has plenty to work with in contesting the mental-state determination"). A reasonable jury might have determined, for example, that the crazed and demented tone of Mr. Twitty's letters, together with his implausible claims such as an assertion that he had access to a grenade launcher and the toxin ricin, created a reasonable doubt concerning his subjective intent that his communication be viewed as an actual threat, or his knowledge that it would be so viewed.

Appellate judges are poorly equipped "to evaluate states of mind based on a cold record." *Id.* The issue of Mr. Twitty's subjective intent is one "best left to the determination of a properly instructed jury." *United States v. Wacker*, 72 F.3d 1453, 1465 (10th Cir.1995). Finally, we note that the jury in Mr. Twitty's case, even though not instructed on the subjective-intent element, acquitted him of one of the three § 876(c) counts charged.[4]

Turning to the fourth element of the plain-error test, we find it satisfied as well. Given the importance of the subjective-intent issue to Mr. Twitty's case, the importance of this element in true threat cases in general, the overriding importance

---

4. Mr. Twitty did not testify at trial. The government points us to his pretrial admissions to a United States Marshal, admitted at trial, that "it may have been his intent to make people nervous" and that "people could infer a threat even though his letters did not con-

tain a 'direct threat.'" Gov't Supp. Br. at 9 (quoting R., Vol. VI at 163). But these conditionally worded statements hardly constitute overwhelming evidence of Mr. Twitty's subjective intent.

of First Amendment concerns, and "the oddity of permitting a criminal conviction to stand based on a reasonable-person—which is to say, negligence—standard," *see Houston*, 792 F.3d at 668, we conclude that the error is one that seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Recent Tenth Circuit authority supports this result. In *Wheeler*, 776 F.3d 736, the defendant was convicted of transmitting a threat in foreign commerce under 18 U.S.C. § 875(c), based on his Facebook posts that called upon his "religious followers" to commit violent acts, including killing law enforcement officers, children, politicians, judges, district attorneys, public defenders and their children. *Id.* at 738. The district court erroneously refused to instruct the jury at his trial that in order to convict, it had to find that he subjectively intended the Facebook posts as threats. On appeal, the government contended that no rational juror could conclude that the defendant did not subjectively intend for his remarks to be threatening. We disagreed, noting among other things that a rational juror could have concluded that he honestly thought no one would see his posts, and that he had no religious followers. We also noted that the "revenge motive" evidenced by his subsequent statements to police constituted "circumstantial evidence relevant to a jury's determination of whether [he] acted with the requisite intent," but given that the omitted element was not "supported by uncontroverted evidence ... the issue of intent must be determined by a jury upon retrial." *Id.* at 741 (internal quotation marks omitted). Although in *Wheeler* the threats were not personally mailed to the defendant's victims, as Mr. Twitty's were, the same sort of concerns about inferences to be drawn by a jury concerning the defendant's subjective intent that made retrial appropriate in *Wheeler* are present here.

## C. Sufficiency of the Evidence

▮ Mr. Twitty also contends that the evidence was insufficient to support his conviction under § 876(c). Although we have reversed his conviction, we must consider this issue as well, because if the evidence was insufficient, he cannot be retried under double-jeopardy principles. We conclude that the evidence was sufficient, and he may be retried.

"The government may retry a defendant whose convictions ... are set aside due to trial error without running afoul of the Double Jeopardy Clause." *United States v. Pearl*, 324 F.3d 1210, 1214 (10th Cir. 2003). This is because "reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case." *Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

In *Wacker*, 72 F.3d at 1464–65, we remanded for a new trial because we found it unclear due to a post-trial clarification of the law by the Supreme Court how a properly instructed jury might have determined an issue. We noted that this result was not inconsistent with the Double Jeopardy Clause. This was because the evidence was sufficient to have convicted the defendant under the standard in effect at the time of trial, and the government could not be held responsible for failing to muster evidence to meet a standard that did not exist at that time. *Id.* at 1465. Applying this standard to Mr. Twitty's case, we look to whether there was sufficient evidence to convict him under the law in effect at the time of his trial. *See also Houston*, 792 F.3d at 670 (collecting cases indicating that sufficiency of evidence is determined under previous law, analyzing sufficiency of evidence in plain-error case

using pre-*Elonis* standard, and concluding that evidence was sufficient); *cf. Wheeler,* 776 F.3d at 741–46 (finding instructional error under *Heineman,* but sufficient evidence for retrial under pre-*Heineman* standard). For the reasons we stated in *Twitty I,* 591 Fed.Appx. at 680–83, sufficient evidence supported Mr. Twitty's conviction under the standard in effect at the time of his trial. Therefore, under *Wacker,* he may be retried under the proper standard.

Recently, the Supreme Court decided *Musacchio v. United States,* —— U.S. ——, 136 S.Ct. 709, 193 L.Ed.2d 639 (2016). In that case, the issue was whether, "when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime [or] against the erroneously heightened command in the jury instruction." *Id.* at ——, 136 S.Ct. 709. The Court held that sufficiency of the evidence should be assessed against the elements of the charged crime. *Id.* The issue of a *change in the law* that added an element that the government was required to prove was not before the Court in *Musacchio.* Nevertheless, to the extent that *Musacchio* suggests that (contrary to *Wacker* and the cases collected in *Houston* ) the sufficiency of the evidence is to be measured strictly by whether there was sufficient evidence to find the defendant guilty of *all* of the elements of the charged crime, separate from any cabining attributable to

instructional error, we find that test satisfied here.

To make a finding of sufficiency of the evidence, all that is required "is for the court to make a legal determination whether the evidence was strong enough to reach a jury at all." *Id.* (internal quotation marks omitted). On the evidence presented here, a properly instructed jury could have concluded (but was not required to conclude) beyond a reasonable doubt that Mr. Twitty subjectively intended his communications as a threat, or with knowledge that they would be viewed as a threat. The extreme and violent language contained in the letters, their reference to specific and detailed violent acts, and the fact that they were sent to specific, identified recipients, would permit a reasonable jury to find the necessary evidence to satisfy both the "true threat" and *mens rea* requirements.[5] Thus, even if the sufficiency of the evidence is measured by the "new" standard under *Elonis,* Mr. Twitty may be retried.

### 2. Sufficiency of the Indictment

In his supplemental brief, Mr. Twitty also challenges the sufficiency of the indictment due to its omission of the *mens rea* element. But he forfeited this challenge by failing to raise it in his opening appeal brief in *Twitty I. See Bronson v. Swensen,* 500 F.3d 1099, 1104 (10th Cir. 2007) (stating this court "routinely [has] declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief").[6]

---

**5.** To the extent Mr. Twitty relies on a one-sided recitation of portions of the testimony of certain government witnesses to argue that the evidence was insufficient to reach a jury, we find his argument unconvincing in light of the language of the letters and the entirety of the testimony at trial.

**6.** Although the statement of facts in Mr. Twitty's opening brief included an allegation that

the grand jury was "misled" by the government's attorney into issuing "an indictment against Appellant for a crime that did not exist," Aplt. Opening Br. at *v,* he did not tie this contention to the subjective-intent issue he now seeks to raise. He also argued that the indictment was procured by false testimony, *see id.* at 23, but this contention did not develop an argument concerning its facial

■ Mr. Twitty contends that because failure to include the subjective-intent element in the indictment was "jurisdictional," he could not forfeit the argument. He is wrong. In *United States v. De Vaughn*, 694 F.3d 1141, 1149 (10th Cir.2012), this court applied *United States v. Cotton*, 535 U.S. 625, 629–31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) to hold that neither an omission of an element from an indictment, nor an argument that the indictment does not charge a crime against the United States, represents a jurisdictional defect.

In sum, the issue of the sufficiency of the indictment is not jurisdictional, and was subject to forfeiture. Mr. Twitty forfeited this argument by failing to raise it in his opening brief.[7] That said, should the government elect to retry Mr. Twitty on the § 876(c) counts, it will need to amend the indictment to include the subjective-intent element. *See Elonis*, 135 S.Ct. at 2009 (noting as a general matter, that "a guilty mind is a necessary element in the *indictment* and proof of every crime." (emphasis added)).

### 3. Pending Motions

Mr. Twitty filed numerous motions in this court both before and after the Supreme Court issued its decision. In particular, he has requested release pending appeal from this court, has unsuccessfully requested release pending appeal from the district court, and recently filed a motion in this case seeking review of the district court's denial of his district court motion for release. Now that we have disposed of this appeal, his motions addressing release *pending appeal* are moot. To the extent

he seeks release from incarceration pending further proceedings in his case, he may seek relief in the district court, which can consider his motion in the first instance and make an appropriate determination. We therefore deny his requests or motions for immediate release. All other pending motions are denied.

### CONCLUSION

We reverse Mr. Twitty's conviction and remand the case for further proceedings. All pending motions are denied.

---

sufficiency on the grounds he now raises. In sum, Mr. Twitty's passing discussion of subjective intent, and occasional references to the indictment, did not sufficiently raise this issue in his opening brief.

**7.** Mr. Twitty's references to the indictment in response to a post-briefing 28(j) letter and in his second motion for bond did not timely and sufficiently present the issue of facial sufficiency of the indictment for our appellate review.